TITLE GUARANTEE & TRUST CO. v. HAVEN et al.

(Supreme Court, Appellate Division, First Department.   January 3, 1913.)

1. APPEAL AND ERROR (§ 1195*)—REVERSAL—NEW TRIAL.
    Where a judgment appealed from is reversed by the Court of Appeals
    and remanded for a retrial before a referee, the decision of the Court
    of Appeals is the law of the case, unless the facts established on a re-
    trial are such as to show that the premise on which the conclusion of
    the Court of Appeals was based is untrue.
        [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4661–
    4665; Dec. Dig. § 1195.*]

2. SUBROGATION (§ 11*)—FORGED CHECK—TRUSTS.
    Certain real property being subject to the lien of certain assessments,
    and the owner, since deceased, being advised thereof by G., who was her
    agent, she sent G. a check for the amount, and he drew his check to the
    order of the collector for like amount, and sent it to his servant, A., to
    deliver to the collector in payment of the assessments. A., being a de-
    faulter, used the check to cover his defalcations with reference to the
    estate of the landowner's husband, of which G. had charge, and subse-
    quently forged a check on plaintiff bank, drawn against funds belonging
    to G.'s estate, with which the assessments were paid to the collector.
    Held that, since it was not the intent of the landowner to pass the land
    to her distributees charged with the assessments, but rather to pay the
    same out of her personal estate, and she having deposited the money with
    G. to be used in paying the assessments, the forged check was not without
    consideration, and the money so deposited with G. would be regarded as
    impressed with the trust, and hence plaintiff was not entitled to the sub-
    rogation to the city's lien, in order to enforce its claim for reimbursement,
    on having credited G.'s estate with the amount of the forged check.
        [Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 4; Dec. Dig.
    § 11.*]

Appeal from Judgment on Report of Referee.

Action by the Title Guarantee & Trust Company against Fanny Ar-
not Haven and others, as executors of Matthias H. Arnot, deceased.
From a judgment entered on a referee's report, dismissing the com-
plaint on the merits, plaintiff appeals. Affirmed, on the opinion of the
referee.

See, also, 126 App. Div. 802, 907, 111 N. Y. Supp. 305, 309; 196
N. Y. 487, 89 N. E. 1082, 25 L. R. A. (N. S.) 1308, 17 Ann. Cas.
1131.

The opinion of Referee Morgan J. O'Brien is as follows:

This is the second trial of this action. After the action was begun, one of
the original defendants died, and his personal representatives were substi-
tuted. For the sake of brevity, I shall ignore this change of parties. The
defendants were the devisees of a piece of land situated in the city of New
York, under the will of Marianna A. Ogden, who died September 28, 1904.
At the time of her death the property so devised to the defendants was sub-
ject to the lien of certain assessments (not taxes) to the amount of $9,953.83.
Thereafter the defendants contracted to sell the land in question, and there
is some evidence that these assessments were disclosed upon a title com-
pany's search, and so brought to the notice of a representative of the defend-
ants. There is no proof that the defendants themselves had any knowledge
of the assessments or of their payment. While the closing of the title was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

pending, the assessments were paid. This payment was made by a person whose identity was not known at the time of the previous trial, by means of a check for the above-mentioned amount, which was drawn upon plaintiff (in its capacity of a banking institution) against an account of the estate of Andrew H. Green, and signed, "William O. Green, Trustee." This check was a forgery; but it was paid in good faith by the plaintiff to the payee, the collector of assessments and arrears of the city of New York, and the lien of the assessments was discharged prior to the conveyance by the defendants of the land pursuant to their contract. Thereafter, upon being advised of the forgery, the plaintiff credited back to the account of the estate of Andrew H. Green the amount of this check, and then brought this action against these defendants alone, to recover the amount which it had so paid, upon the theory that by discharging the assessments the plaintiff became subrogated to the lien of the city, and that such lien continued in force as between the plaintiff and the defendants, and upon the sale attached to the proceeds. Upon the trial the complaint was dismissed, and upon an appeal upon the judgment roll alone the judgment was affirmed by the Appellate Division. 126 App. Div. 802, 111 N. Y. Supp. 305. Upon a further appeal to the Court of Appeals the judgment was reversed, and this trial was ordered. 196 N. Y. 487, 89 N. E. 1082, 25 L. R. A. (N. S.) 1308, 17 Ann. Cas. 1131.

Upon this trial the decision of the Court of Appeals constitutes the law of the case, which I must follow. Judge Bartlett, in his opinion, referred to the facts above recited, and also to the answer, which sets up the devise to the defendants by Marianna A. Ogden, subject to the assessments, and the further facts that the said Andrew H. Green was for many years her agent and representative in the care of her real estate, that she had sent him the amount of these assessments, but that he had never paid the same, and that all these facts were known to the plaintiff at the time it repaid to the Green estate the amount of the forged check. Judge Bartlett then pointed out that the facts were found by the referee substantially as pleaded, "except that there is no finding of the receipt of any money by Andrew H. Green from Marianna A. Ogden with which to pay the assessments." He then pointed out that both the referee and the majority of the Appellate Division considered that the case was controlled by section 112 of the Negotiable Instruments Law, and stated that the rule there codified applied only to a holder for value. He then said: "The rule, therefore, that he who accepts a negotiable instrument to which the drawer's name is forged is bound by the act, and can neither repudiate the acceptance nor recover the money paid, has no application in behalf of one who has acquired the paper, in the absence of any consideration therefor either present or past. Such was the case here according to the finding of the referee. So far as appears, the check of the Green estate, which proved to be forged, was not given in payment of any existing or antecedent indebtedness, either on the part of that estate or even of the forger. For these reasons we agree with the learned judge who wrote for the minority in the Appellate Division, saying: 'Section 112 of the Negotiable Instruments Law (Consol. Laws 1909, c. 38), upon which the referee based his decision, has nothing to do with the question.'"

[1] Thereupon, differing from the courts below, the learned judge, starting with the premise that, "upon the facts as found by the referee, we have here the case of a purely gratuitous payment of assessments, constituting at the time a lien in favor of the city of New York, upon lands owned by the defendants, which payment was clearly induced by the fraud or forgery of some party unknown," showed that the plaintiff was entitled equitably to be subrogated to the lien of the city and to recover the amount paid by it. If the facts, as they appear before me, were the same as stated in this premise, I should be bound to direct judgment for the plaintiff; but otherwise not. This conclusion is further supported by Judge Bartlett's saying: "It must be distinctly understood that this view is predicated upon the assumption that the payment of the assessments was purely gratuitous, and is nowise in discharge of any real or supposed obligation upon the part of the estate of Andrew H. Green, or of the unknown forger, but was brought about solely

by mistake induced by the forgery. Upon this assumption, we think that the plaintiff, on proof of the facts stated in the complaint, would be entitled to be subrogated to the lien of the city as against the proceeds of the sale of the land in the hands of the defendants. If, however, it should be made to appear that the payment was not thus gratuitous, we are of opinion that the right of subrogation could not successfully be asserted."

Upon the trial before me there can be no doubt that it has been made to appear that the payment was not "thus" gratuitous. The fact that was pleaded, but which, as Judge Bartlett specifically pointed out, was not found upon the former trial, is now fully established. Mrs. Ogden, in July, 1903, upon being advised by Mr. Green of the amount of these assessments as finally fixed, transmitted to Mr. Green a check for the amount thereof, $9,953.83, for the express purpose of making payment of said assessments. The proceeds of this check were collected by Mr. Green. Subsequently Mr. Green again asked her for this check, and she reminded him of having already sent it, which he then found to be so, and wrote her to that effect. There can be no doubt, then, that Mrs. Ogden fully understood that the assessments had been paid. There is, too, no doubt that Mr. Green was provided with funds to pay the assessments for which he was chargeable. Moreover, the identity of the forger and the reason for the forgery now fully appear. The forger is shown to be one Lyman S. Andrews, who was an employé of Mr. Green, and of the estate of William B. Ogden, and who kept their books. Andrews was a defaulter. Upon the receipt of Mrs. Ogden's check in July, 1903, to pay these assessments, Mr. Green drew his check to the order of the collector for a like amount, and sent it to Andrews, so that he might make the payment. Andrews, to cover some of his defalcations, used this check to pay some arrears upon property belonging to the estate of William B. Ogden. Subsequently, when the sale of the property in question was pending, he forged the check which was paid by the plaintiff to discharge the assessments upon the property in question, and which then had passed to the defendants.

The appeal to the Court of Appeals after the previous trial having been heard upon the judgment roll alone, the only thing before that court which could have suggested the line of reasoning which is found in the opinion was the allegation in the answer of the defendants that the money to pay these assessments had been transmitted to Mr. Green by Mrs. Ogden in her lifetime. The court was obviously unable to determine whether the failure so to find was due to a failure of proof, an exclusion of evidence, or the inadvertence of counsel, who might have been misled as to the necessity therefor by the referee's ruling in their favor, independently thereof. The Court of Appeals knew that Mrs. Ogden was dead, that her estate was necessarily represented by executors or administrators, and that the defendants were devisees. All of the circumstances upon which the plaintiff now rests its argument were before that court. All that was lacking was a finding that Mr. Green received the money. I cannot believe that the Court of Appeals would have expressed itself as it did, if it had meant that an obligation in the nature of a debt on the part of the Green estate to the defendants must be shown, because it was evident that such would not be established, nor can I believe that this consideration, now so earnestly advanced by the plaintiff, was overlooked by the Court of Appeals. The opinion of the Court of Appeals, as I read it, is a direct intimation that if the receipt by Mr. Green of the money to pay the assessments is now found as a fact, as it must be upon the proof, then judgment is to be given for the defendants. But, even if I am in error in so construing the opinion of the Court of Appeals, and that court did not intend thus to define the proof which was necessary and the effect to be given to it, I am still of the opinion that judgment must be for the defendants.

[2] The plaintiff's present position, apparently, is that the Court of Appeals declared that the right of subrogation existed upon the assumption that the payment of the assessments was not "in discharge of any real or supposed obligation upon the part of the estate of Andrew H. Green or of the unknown

forger," and that the present record does not show any such obligation. Its contentions are that there was not shown any real or supposed obligation on the part of the Green estate or of the forger to these defendants; that as devisees of the property, subject to an assessment, they took it cum onere, and could not call upon the executors of Mrs. Ogden's estate to discharge the assessments; that Green received the money remitted by Mrs. Ogden as her agent; that upon her death his authority was revoked, and he could not thereafter pay the money to the city to discharge the assessments; that an obligation to account for the money and to pay over the same to Mrs. Ogden's executors at once arose; and that such obligation could not be discharged either by paying the money to the city or to the defendants. It is also contended that there was no obligation, real or supposed, on the part of the forger to the defendants. To these contentions I cannot assent.

It will be noticed upon a reading of the quotation from the Court of Appeals that that court did not in terms refer to an obligation "to these defendants." It said simply obligation. There can be no doubt that the check was given to discharge an obligation. Green had received the money to pay the assessments, and was therefore under an obligation to some one. Andrews' motive in drawing the check was doubtless to prevent the discovery of his wrongdoing; but his intent was to discharge that obligation, because it was only by so doing that he could cover up his misapplication of the check which Mr. Green had delivered to him. The possible effect of the death of Mrs. Ogden upon the character of this obligation probably never occurred to him. He applied the forged check to the purpose for which the money was originally placed in Mr. Green's hands, and doubtless fully believed that in so doing he had adopted the proper method to discharge that obligation.

But can it not be said that there was an obligation on the part of the Green estate to these defendants? Mrs. Ogden made her will shortly prior to the time when these assessments were placed upon the property, devising it to these defendants. It is obvious, from the fact that, immediately upon being advised of the assessments, she sent the money to pay the same, that she intended the defendant to take the property free and clear of this incumbrance. She was advised that a certain portion of the value of this piece of realty had been cut off, and for the purpose of restoring that realty to its former condition she set apart a portion of her personal estate in the hands of Mr. Green to make whole the realty. If, now, these defendants are required to pay the amount claimed in this action, her wishes and intentions will be thwarted. The defendants will get less than she intended them to have, and if the Green estate pays the executors the amount which Mr. Green received the legatees of her personal estate will obtain property she did not intend them to have. In my opinion, the money so deposited with Mr. Green should be regarded, in equity, at least—and it is only in equity that the plaintiff can assert any claim, and certainly if the plaintiff can appeal to equity to enforce a claim the defendants may resist it by the same means—as converted into the land and to be impressed with a trust for whosoever owned the land and to which the defendants succeeded by reason of the devise to them of the land.

There is nothing in Matter of Hun, 144 N. Y. 472, 39 N. E. 376, inconsistent with this view. That was a case of a devise of property which was subject to assessments, and it was held that the devisee took cum onere. In this case there was a devise of property which the testatrix intended should be, and which she believed was, free and clear of the lien of these assessments; and the question here is, not whether a devisee of real property can have assessments which are liens thereon discharged out of the general personal estate, but whether these devisees could have the fund which the testatrix set apart to pay these assessments, and which she believed had been so used, applied for that purpose.

The plaintiff alleges that the transmission to Mr. Green of the money to pay the assessments did not constitute a trust, but only a revocable agency, and cites numerous cases. I do not find anything in any of the cases which are cited which conflicts with my view. It may be that Mrs. Ogden could

at any time before the assessments were paid, have demanded a return of the money, and that the city of New York could not have enforced the payment by Mr. Green of the assessments. This is not, however, like a case of an agent binding his principal by virtue of a power of attorney, which, of course, becomes inoperative upon the death of the principal, nor it is like the case of a check which had not been presented at the time of the drawer's death. This case is analogous to those in which a trust is created by the deposit of moneys in a savings bank in trust for another.

In Matter of Totten, 179 N. Y. 112, at page 125, 71 N. E. 748, at page 752 (70 L. R. A. 711), it was said: "A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or demonstration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." Here there was a setting apart out of the general assets of Mrs. Ogden of a specific fund for a purpose which was declared. There was a depository, and there was an intended beneficiary, who, although not named in the declaration, was identifiable. To hold that, upon the failure of Mr. Green to apply these moneys to the purpose for which they were sent to him and the subsequent death of Mrs. Ogden, a trust arose in favor of the defendant, is in accordance with equity and does not offend any provision of law. If Mrs. Ogden had, by her will, directed her executors to pay these assessments, whereby their payment would have been an obligation of her estate, the plaintiff could not have recovered under the decision in action No. 1. 196 N. Y. 487, at page 497, 89 N. E. 1082, 25 L. R. A. (N. S.) 1308, 17 Ann. Cas. 1131. In equity, it seems to me that the same effect should be given to her direction, as shown by her remittance of the money for that purpose.

I cannot fail to be impressed by the fact that, prior to the reimbursements by the plaintiff to the Green estate of the amount of the forged check, the parties stood in the position which justice assigned to them. The plaintiffs had suffered no prejudice. The executors of the Ogden estate had received everything which Mrs. Ogden intended that they should receive. The defendants had received nothing which they should not have received. The Green estate had merely paid out the amount of money which it had previously received from Mrs. Ogden. To be sure, Mr. Green had attempted prior thereto to make this payment, but his effort was defeated by the crime of Andrews; but Andrews was Mr. Green's employé, and his crime was directed against Mr. Green, and the loss due to that crime should fall upon Mr. Green and his estate.

We have here the case of two parties, both innocent. The plaintiff has suffered a loss, but the defendants have not profited thereby. They have received only what this testatrix intended them to have. The act of the forger simply restored to them what his prior wrong had taken from them. Surely, if the forger had drawn this money in cash and had then paid the assessment, the plaintiff could not have recovered from these defendants. There should be no different result. Equitably the plaintiff should be reimbursed for the amount it paid out. Equitably the defendants are entitled to retain all which they have received. The legal title is, however, with the defendants, and it is well settled that, where the equities are equal, the legal title must prevail.

At the present time the plaintiff has disbursed $9,953.83, which it ought to receive back. The Green estate received from the plaintiff $9,953.83, which it was not justly entitled to, because the forged check was used to pay a charge for which it had received the money and unless the plaintiff can find some means of reaching that sum it must bear the consequences of its error. Equity as surely forbids a recovery from these defendants upon this record as it authorized it upon the former record.

Judgment should accordingly be entered in favor of the defendants, dismissing the complaint upon the merits, with costs.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, SCOTT, MILLER, and DOWLING, JJ.

B. N. Cardozo, of New York City, for appellant.
J. V. Bouvier, of New York City, for respondents.

PER CURIAM. Judgment affirmed, with costs, on opinion of referee. Order filed.

PEOPLE ex rel. RODENBERG v. WARDEN.

(Supreme Court, Appellate Division, First Department. January 3, 1913.)

**1. CRIMINAL LAW (§ 1206*)—PUNISHMENT.**
A sentence to the penitentiary of the county of New York after conviction of receiving stolen goods was authorized under New York City Consolidated Act (Laws 1882, c. 410) § 1453, providing that any person convicted of such an offense in the city of New York may be sentenced in the discretion of the court to imprisonment in the city penitentiary for the same term as he may be sentenced to imprisonment in a state prison; such statute being in harmony with the Penal Code, and not repealed by Penal Law (Consol. Laws 1909, c. 40) § 1308, providing that the crime of receiving stolen property is punishable by imprisonment in the state prison for not more than five years or in the county jail for not more than six months.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3271–3277, 3279, 3280; Dec. Dig. § 1206.*]

**2. CRIMINAL LAW (§ 1217*)—PUNISHMENT—UNIFORMITY.**
The uniform administration of criminal laws throughout the state does not require that all sentences to imprisonment should be carried out in similar institutions.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3269; Dec. Dig. § 1217.*]

**3. CRIMINAL LAW (§ 1206*)—"PENITENTIARY"—"COUNTY JAIL."**
The "penitentiary" of the county of New York is not the county jail of that county in the sense in which the phrase "county jail" is used in the Penal Laws.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3271–3277, 3279, 3280; Dec. Dig. § 1206.*

For other definitions, see Words and Phrases, vol. 2, p. 1663; vol. 6, pp. 5279–5280.]

Appeal from Special Term, New York County.

Application for writ of habeas corpus by the People, on the relation of Philip Rodenberg, against the Warden, etc. From an order (75 Misc. Rep. 77; 132 N. Y. Supp. 577) sustaining the writ and discharging relator, the People appeal. Reversed, writ dismissed, and relator remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Robert S. Johnstone, of New York City, for the People.
Louis Levy, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.