## (June 28, 1940.)

MARY E. KRAUSE, Respondent, *v.* WILLIAM KRAUSE, ALBERT KRAUSE, ANNA SEVERIN, Appellants, and BUFFALO SAVINGS BANK, Defendant.

MEMORANDUM. The referee's findings that the transfers were illusory are contrary to and against the weight of the evidence. The transfers are present absolute transfers and the real property and personal property involved in this action are not part of the estate of Gustav Krause. (See *Newman* v. *Dore*, 275 N. Y. 371, and *Murray* v. *Brooklyn Savings Bank*, 258 App. Div. 132.)

All concur, except Cunningham and Harris, JJ., who dissent and vote for affirmance in an opinion by Harris, J. Present — Crosby, P. J., Cunningham, Taylor, Harris and McCurn, JJ.

HARRIS, J. (dissenting). The plaintiff in this action is a stepmother who sues her three stepchildren, the individual defendants, and also the Buffalo Savings Bank, which is brought into this action solely because it is the depositary of a fund which may be claimed by the defendant Anna Severin. The claim of the plaintiff is that prior to his death her husband, the father of the children, executed and caused to be recorded two deeds, one to each one of the defendants Krause, each of such deeds conveying to the specifically named son a certain piece of real property; and that he maintained an account in the defendant Buffalo Savings

Bank under his name as trustee for the defendant Anna Severin, and that all of these transactions in reference to the property, real or personal, were to prevent the plaintiff from inheriting from her spouse. She claims, and the court below has found, that such transfers were illusory and not real. (*Newman* v. *Dore*, 275 N. Y. 371; *Murray* v. *Brooklyn Savings Bank*, 258 App. Div. 132.) She seeks a declaration of the court by way of decree or judgment that at the time of the death of her husband such property became a part of his estate and that she is entitled to her widow's interest in such property by reason of the provisions of section 83 and section 18 of the Decedent Estate Law.

Section 83, in so far as it relates to such contention of the plaintiff, is as follows: " The real property of a deceased person, male or female, not devised, shall descend, and the surplus of his or her personal property, after payment of debts and legacies, and if not bequeathed, shall be distributed to the surviving spouse, children, or next of kin or other persons, in manner following: 1. One-third part to the surviving spouse, and the residue in equal portions to the children, and such persons as legally represent the children if any of them have died before the deceased."

The provisions of section 18 are as follows: " 1. Where a testator dies after August thirty-first, nineteen hundred and thirty, and leaves a will thereafter executed and leaves surviving a husband or wife, a personal right of election is given to the surviving spouse to take his or her share of the estate as in intestacy, subject to the limitations, conditions and exceptions contained in this section. * * * 2. Where any such election shall have been made, the will shall be valid as to the residue remaining after the elective share provided in this section has been deducted and the terms of the will shall as far as possible remain effective. * * * 7. An election made under this section shall be in lieu of any right of dower, and must be made within six months from the date of the issuance of letters testamentary or if letters testamentary have not been issued from the date of the issuance of letters of administration with the will annexed, and shall be made by serving written notice of such election upon the representative of the estate personally or in such other manner as the surrogate may direct and by filing and recording a copy of such notice with proof of service in the Surrogate's Court where such will was probated. * * * 8. Any question arising as to the right of election shall be determined by the Surrogate's Court having jurisdiction of the estate in a proceeding brought for that purpose after the service of citation upon the persons interested, or in a proceeding for the judicial settlement of the accounts of the representative of the estate."

Section 18 is not available to the plaintiff for relief in this action. The deceased spouse left a will in which he made his three children the sole beneficiaries of his estate. Such will has not yet been presented for, or admitted to, probate. The election to take as against the will can only be expressed in the manner for which provision is made in subdivisions 7 and 8 of section 18, as above set forth. (*Murray* v. *Brooklyn Savings Bank, supra.*)

The court below held that section 18 of the Decedent Estate Law was available to the plaintiff in this action, but the case of *Murray* v. *Brooklyn Savings Bank* (*supra*) is sufficient to warrant holding against this viewpoint of the trial court.

But even if the provisions of section 18 of the Decedent Estate Law were not

available as a means of remedy to the plaintiff, if her rights under section 83 of the Decedent Estate Law have been violated then she has a cause of action under such section 83.

Prior to the adoption of the Decedent Estate Law with its present provisions for a surviving spouse, the statute gave to a surviving spouse by the law the right of dower and the right of curtesy. These rights were done away with on the adoption of the present Decedent Estate Law and in considering the case before us it is most important to note well why such changes were made. Under the former law a husband dying in possession of any amount of personal property could deprive the surviving spouse of any interest in his estate, providing he died not seized of any real estate, and very often, if the spouse were seized of real estate, the dower interest in his real property would be very small compared to his total material fortune at the time of his death. Requiring a husband to support his wife throughout her married life in accordance with his means, but giving him the right to deprive her of proper support after his death, was recognized as an injustice and the Legislature enacted the present sections of the Decedent Estate Law, including sections 18 and 83, to dispose of such injustice and to provide for proper support of a wife after the death of a husband. Prior to the enactment of such provisions a Commission to study the subject was created by the Legislature. The language of the original report of the Commission submitted to the Legislature in 1928 (Legislative Document [1930] No. 69, p. 75 *et seq.*) (wherein the Commission reported that the scope of its work was confined to substantive law and to certain subjects), made the following recommendations: (page 80): (8) " The protection of the widow or surviving husband against disinheritance by an unjust testator by the grant of a right of election to take a specific part of the estate against the will. This right is to correct the almost entire absence of protection for the widow under the present law." 9. " To meet modern economic conditions, an increase of the relatively small property and money exemptions granted by section 200 of the Surrogate's Court Act to a surviving wife or husband or the infant children."

(Page 86): " There is a glaring inconsistency in our law which compels a man to support his wife during his lifetime and permits him to leave her practically penniless at his death. The only limitation to this right is contained in section 17, Decedent Estate Law, which prohibits the testator from bequeathing more than one-half of his estate to charitable corporations or purposes in case the decedent leaves husband or wife, child or parent. But the inconsistency of the statute is that the alleged principle of public policy does not protect those whom it is designed to protect. A man leaving a wife or children or parent may give one-half of his estate to charity, and the other half to a stranger, entirely ignoring those dependent upon him. The unlimited power conferred upon the maker of a will by our New York law of liberty of bequest is absolutely at variance with the legal liability of an unnatural father or a neglectful husband in his lifetime. Under our humanitarian laws he may be compelled during his life by criminal proceedings or civil process to contribute to the support of a wife or minor children. Death frees his property from this liability and he may do with it what he pleases by a valid will. The average testator is just in his testamentary gifts to his dependents, but examples of injustice often occur." (Reciting examples of injustice.)

(Page 87): " The Commission advocates the adoption of a statute similar to that enacted by Pennsylvania in 1917. In line with the progressive policy of modern legislation, and in place of dower, the Commission recommends that there be substituted the right of the widow to take her intestate share against the provisions of the will. Thus disinheritance or unfair discrimination will be avoided. We do not propose to go as far as Pennsylvania did, because that Commonwealth permits the surviving spouse to elect to take the entire intestate share outright as against the terms of the will. It does not seem to the Commission to be desirable that the right to take the intestate share should be given to the surviving spouse in every estate, regardless of its amount."

*Legislative Document (1930) No. 69.*

(At page 6, re section 18): " It was the intention of the Commission that the opportunity to make a will which should seek to disinherit the surviving spouse should end on August 31, 1930, and that no new will, or codicil (no matter how slight the change made in the existing will), might be made thereafter without subjecting the testator's estate to the application of Section 18." (The above statement was made in answer to inquiries regarding the doubtful construction of new section 18 as including codicil.)

Following such report, the Legislature enacted the Decedent Estate Law as it is now known, from which law there is quoted as pertinent herein section 82.

Section 82. Provisions for surviving spouse in lieu of dower.

" The shares of the surviving spouse as provided in this article as to any real property are in lieu of any and all rights of dower therein. If the surviving spouse elects to take dower in any real property, such election shall be made in the manner provided in section two hundred and one of the Real Property Law."

Section 87. Effect of divorce, abandonment, or refusal to support upon rights of former husband or wife to distributive share.

" No distributive share of the estate of a decedent shall be allowed under the provisions of this article, either

" (a) to a spouse against whom or in whose favor a final decree or judgment of divorce recognized as valid by the law of this State has been rendered;

" (b) or to a spouse who has procured without the State of New York a final decree or judgment dissolving the marriage with the decedent, where such decree or judgment is not recognized as valid by the law of this State;

" (c) or to a husband who has neglected or refused to provide for his wife, or has abandoned her;

" (d) or to a wife who has abandoned her husband."

Section 18.

Subd. 3. " The right of election shall not be available to a spouse against whom or in whose favor a final decree or judgment of divorce recognized as valid by the law of the State has been rendered, or against whom a final decree or judgment of separation recognized as valid by the laws of this State has been rendered. Nor shall such right of election be available to a spouse who has procured without the State of New York a final decree or judgment dissolving the marriage with the testator where such a decree or judgment is not recognized as valid by the law of this State."

It made unavailable any of the estate, either distributive or by will, to a surviving spouse who had been divorced or who had neglected or abandoned the deceased spouse.

The court below could, and did, apply to its study of the facts in this case the legislative acts hereinbefore quoted and the intent of the Legislature as gathered from the report of the Commission on which such legislation was based and from section 20 of chapter 229 of the Laws of 1929. That is, it examined the transfers of property that were attacked in the endeavor to discover whether they were real in their nature and, therefore, intended to remove from the property which the surviving spouse could receive on the death of husband the properties covered by such transfers, or whether such transfers with reference to the property were merely masks which left in the hands of the decedent unto the time of his death such properties. The trial court has decided that the latter was the truth and that the transfers were illusory. An examination of the facts which were before the trial court shows that they were sufficient to substantiate its findings of fact that these assumed transfers were illusory.

In reference to the account in the Buffalo Savings Bank in the name of the decedent as trustee of the defendant Anna Severin, the established facts were that she resided in Germany and had never been in this country; that the funds in such account were transferred from an account which the decedent had previously held in his own name as trustee for one of his sons; that he had absolute control of such account until the moment of and time of his death. Under the rule expressed in *Matter of Totten* (179 N. Y. 112) the court below could well hold as it did that the deceased during his lifetime intended to, and did, bring about a situation by which any interest which his daughter would have in such account would not, and could not, accrue until after he had left this life.

In reference to the transfer of the real property, practically the only proof before the court below was that there was on record the two deeds to which reference is made hereinbefore. There is no proof of the delivery of the same to the named grantees and no proof that either of the said grantees knew of the existence of the deeds. One of the sons, who is named as a grantee, sat in the court during the trial of the case and did not testify, while the other remained without the State during the trial. Neither was disqualified from testifying, except as to personal transactions. There was testimony as to the alleged transfers of title: (1) that given on behalf of the plaintiff by her relatives that the decedent had said that he would arrange so that the plaintiff would have no share in his estate, and (2) that given on behalf of the individual defendants that the plaintiff had urged the decedent to transfer his property to his children. On this dispute of fact the trial court found in favor of the plaintiff. Further proof established that the dating both of the execution and recording of the deeds and that of the unprobated will were the same. The finding of the trial court that there was no real transfer of title was not against the weight of evidence. A trier of fact could well see the picture, which presented itself, of a man anxious that his children should succeed to his property in preference to his second wife but desirous to retain control of such property until the moment of his death, and the consequent conception and carrying out by him of a plan of remaining in control until his death of all of which he possessed, and, by the making and recording of deeds and the naming of himself as trustee for the daughter, creating the illusion that the transfers were *inter vivos*

and not admitted to be testamentary. The findings of fact and the judgment rendered by the court below should not be disturbed.

Judgment of the court below should be affirmed, with costs.

Cunningham, J., concurs with Harris, J.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.