■ In the Matter of the Estate of HERBERT BECK, Deceased. ANNA M. TWADDLE, as Administratrix of the Estate of HERBERT BECK, Deceased, Respondent; STATE OF NEW YORK et al., Appellants. — Appeal from an order of the Surrogate's Court of Columbia County (Oberwager, S.), entered December 1, 1982, which denied and dismissed the State of New York's objections to the account of the administratrix of the estate of Herbert Beck. Decedent, who died intestate and apparently left no known heirs, was an unpaid co-worker at Camphill Village U.S.A., Inc., a farm community for mentally handicapped adults, from 1963 until his death on July 17, 1981. On November 20, 1969, he opened a regular savings account at the predecessor of Key Bank, N.A., creating a Totten trust in his name in trust for Camphill (see *Matter of Totten*, 179 NY 112). By letter dated November 29, 1973, decedent informed Camphill of the account's existence and advised that, at his death, the money in the account would become Camphill's property. Thereafter, on April 15, 1980, decedent withdrew the funds in this account and (1) transferred $8,000 to a higher interest account, a certificate of deposit opened in his name individually, (2) transferred $3,930 to his already existing checking account, and (3) took $50 in cash. Testimony at the Surrogate's hearing indicated that decedent made the transfer to the higher interest account at the instigation of a bank teller who was competing for a teller training program incentive award. Decedent was not asked by the bank whether he wished to open the new account individually or in trust, nor did he offer this information. The Surrogate found that a revocation of the Totten trust was not intended and thus Camphill was entitled to the funds remaining in the interest-bearing account. This appeal ensued. There being no heirs, the State also made claim against the estate, maintaining that the funds in this particular account should escheat to the State. Legislation effective September 1, 1975, dealing with funds on deposit in Totten trusts on or after that date (EPTL 7-5.7) and designed to establish objective criteria for determining whether such an account has been revoked by the depositor through actions taken while alive (Rohan, Practice Commentary, McKinney's Cons Laws of NY, EPTL 7-5.1 [1982-1983 Supp], pp 139-141), dictates a reversal in this case. The transfer of funds on April 15, 1980 was governed by the new legislation and hence the subjective intent of the deceased is irrelevant; withdrawal of the funds from the Totten trust account effected a revocation of the trust (EPTL 7-5.2). The administratrix' argument that decedent's letter of November 29, 1973 placed

the trust beyond revocation is not persuasive. Although this letter must be interpreted under the law prior to the legislation, thus making decedent's subjective intent relevant, the evidence is that decedent intended to leave Camphill whatever sum was in the account at the time of his death. Nothing in the letter suggests that the Totten trust was to be irrevocable. That decedent did not intend, by this letter, to make the Totten trust irrevocable is also borne out by the withdrawal of $3,930 which decedent deposited in his personal checking account. If, as the record suggests, the bank acted inadvertently when it issued the certificate of deposit in decedent's name alone rather than in the name in which the regular savings account had been carried, then Camphill's remedy would appear to be to proceed against the bank. Order modified, on the law and the facts, to the extent that the claim of Camphill Village U.S.A., Inc., is disallowed and the Attorney-General's objection No. 1 is allowed, and, as so modified, affirmed, without costs. Mahoney, P. J., Yesawich, Jr., and Weiss, JJ., concur.

Mikoll and Levine, JJ., dissent and vote to affirm in the following memorandum by Levine, J. Levine, J. (dissenting). We respectfully dissent. In our view, the majority misapplies EPTL 7-5.2 as mandating that decedent's diversion of a portion of the Totten trust from one form of account to another constituted a total revocation of the trust. The legislative history of EPTL 7-5.2 indicates that its purpose was aimed at resolving an entirely different set of legal problems, namely, that of a donor who may have intended to revoke or modify the trust but failed to take any unequivocal, objectively verifiable steps to act on that intent. Thus, the Law Revision Commission's memorandum lists "three principal questions" resulting in litigation which the proposed legislation was intended to obviate: "(1) When the depositor delivers to the beneficiary the passbook evidencing the account, does he intend to complete a gift of the account? [Citations omitted.] (2) What is the effect of the depositor's statements which may indicate his intention either to give the account to the beneficiary or to revoke or modify the trust? [Citations omitted.] (3) What is the effect of language in the depositor's will which may indicate his intention to modify or revoke the trust? [Citations omitted.]" (1975 Report of NY Law Rev Comm, McKinney's Session Laws of NY, p 1535.) In those instances where the donor may have expressed some intent to revoke or modify the trust during his lifetime or by will, EPTL 7-5.2 (subd [1]) forecloses dispute by directing that such may be effected "only by means of, and to the extent of" a withdrawal from the trust account or an express direction specifically describing the account in the will. In thus stipulating the exclusive means by which an *intended* revocation may be accomplished, the statutory language does not expressly cover the case of a withdrawal not accompanied by any intent to revoke. Certainly, for example, it would be incongruous and unsupported by either the words of EPTL 7-5.2 or the memorandum of the Law Revision Commission that drafted it to apply it to the extreme case where it has been conclusively proven that the withdrawal was inadvertent. There was ample evidence here to support the Surrogate's finding that decedent had no intention to revoke the trust as to the portion thereof transferred to a higher interest-bearing account. Therefore, we would affirm the entire order of the Surrogate.