In the Matter of the Accounting of WILLIAM H. B. TOTTEN,
as Administrator of the Estate of FANNY AMELIA LATTAN,
Otherwise Known as FRANCES A. LATTAN, Deceased.

WILLIAM H. B. TOTTEN, as Administrator, et al., Appellants;
EMILE R. LATTAN, Respondent.

1. APPEAL — ORDER OF REVERSAL UPON THE LAW AND THE FACTS
REVIEWABLE WHEN NO QUESTION OF FACT IS INVOLVED. Upon an
appeal from an order of the Appellate Division reversing a surrogate's
decree, upon the law and the facts, where the inferences from the uncon-
tradicted evidence all point in one direction so that a reasonable mind
can reach but one conclusion, there is no question of fact and the Court
of Appeals has jurisdiction of the appeal.

2. TRUST — SAVINGS BANK DEPOSITS. A deposit by one person of his
own money, in his own name as trustee for another, standing alone, does
not establish an irrevocable trust during the lifetime of the depositor. It
is a tentative trust merely, revocable at will, until the depositor dies or
completes the gift in his lifetime by some unequivocal act or declaration,
such as delivery of the pass book or notice to the beneficiary. In case
the depositor dies before the beneficiary without revocation, or some
decisive act or declaration of disaffirmance, the presumption arises that
an absolute trust was created as to the balance on hand at the death of
the depositor.

*Matter of Totten*, 89 App. Div. 368, reversed.

(Argued June 1, 1904; decided August 5, 1904.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
December 30, 1903, which reversed a decree of the Kings
County Surrogate's Court rejecting certain claims of the
respondent herein against the estate of Fanny Amelia Lattan,
deceased.

This is a controversy between the administrator of Fanny
Amelia Lattan, deceased, and Emile R. Lattan, who presented
a claim against the estate of said decedent which was duly
rejected by the representative thereof. The claim was for the
sum of $1,775.03, besides interest, alleged to be due " by
reason of certain deposits made by" the decedent "in the
Irving Savings Institution, as trustee for the said Emile R.

Lattan, the moneys so deposited having been subsequently withdrawn by the said decedent." Upon the final accounting of the administrator the justice of said claim, in accordance with the stipulation of all concerned, was determined by the surrogate after a referee had reported the evidence, the facts and his conclusion. The surrogate confirmed the report and dismissed the claim upon the merits, but the decree entered accordingly was reversed by the Appellate Division " upon the law and the facts " and the claim was allowed with costs. The administrator and certain heirs and next of kin of the decedent appealed to this court.

*Benjamin F. Tracy* and *George Richards* for appellants. The court below erred in reversing the decree of the surrogate. (*Cunningham* v. *Davenport*, 147 N. Y. 43; *Haux* v. *D. D. S. Inst.*, 2 App. Div. 165; *Beaver* v. *Beaver*, 117 N. Y. 431; *Washington* v. *Bank for Savings*, 171 N. Y. 172; *Lee* v. *Kennedy*, 25 Misc. Rep. 142; *Jennings* v. *Hennessy*, 26 Misc. Rep. 265; *Dickie* v. *Adams*, 40 Misc. Rep. 88; *Matter of Smith*, 40 Misc. Rep. 331; *Green* v. *Sutherland*, 40 Misc. Rep. 559; *P. S. Bank* v. *Webb*, 21 R. I. 218.) Where it appears that the donor has placed the large bulk of her estate in the form of trusts in her lifetime, the law favors the construction of a revocable and not a completed arrangement. (*Hugenin* v. *Baseley*, 14 Ves. Jr. 300; *Coutts* v. *Ackworth*, L. R. [8 Eq.] 567; *Wollaston* v. *Tribe*, L. R. [9 Eq.] 50; *Toker* v. *Toker*, 3 De G., J. & S. 491; *Neal* v. *Black*, 177 Penn. St. 105; *C. S. Nat. Bank* v. *F. Ins. Co.*, 186 Penn. St. 340; *Hall* v. *Hall*, L. R. [8 Ch. App.] 430; *Rick's Appeal*, 105 Penn. St. 536; *Russell's Appeal*, 75 Penn. St. 288, 291; *Garnsey* v. *Mundy*, 24 N. J. Eq. 246.) The burden of proof is upon the claimant. (*Matter of Mullen*, 74 Hun, 364; 145 N. Y. 104; *Matter of Ryalls*, 74 Hun, 207; *Fowler* v. *Lockwood*, 3 Redf. 468; *Matter of Van Houton*, 18 App. Div. 305; *Matter of Rogers*, 153 N. Y. 328; *Lewis* v. *Merritt*, 113 N. Y. 390; *Matter of Bolin*,

8

136 N. Y. 177; *Van Slooten* v. *Wheeler*, 140 N. Y. 633; *Robinson* v. *Carpenter*, 77 App. Div. 520; *De Puy* v. *Stevens*, 37 App. Div. 293.) The Court of Appeals has jurisdiction of questions of law, although the Appellate Division may unanimously call them questions of fact. (*Griggs* v. *Day*, 158 N. Y. 1; *Benedict* v. *Arnoux*, 154 N. Y. 715; *New* v. *Village of New Rochelle*, 158 N. Y. 41; *B. & L. L. Co.* v. *B. L. & I. Co.*, 165 N. Y. 247; *Otten* v. *M. R. Co.*, 150 N. Y. 395; *Westerfield* v. *Rogers*, 174 N. Y. 230; *Halpin* v. *P. Ins. Co.*, 118 N. Y. 170; *Farleigh* v. *Cadman*, 159 N. Y. 169; *Robinson* v. *Appleby*, 173 N. Y. 626.)

*Reuben Leslie Maynard* for respondent. Whenever, upon an appeal to the Court of Appeals, from an order of an Appellate Division, reversing a decree of a Surrogate's Court, which states that the reversal was upon the facts and the law, from an inspection of the record it appears that there was conflicting evidence upon a material question of fact, or that from conceded facts conflicting inferences could be drawn, the right of the Court of Appeals to review the determination of the Appellate Division ceases, and the appeal must be dismissed for want of power to review other questions than those of law. (*Matter of Thorne*, 162 N. Y. 238; *Health Dept.* v. *Dassori*, 159 N. Y. 249; *Bini* v. *Smith*, 161 N. Y. 120; *Steinway* v. *Steinway*, 163 N. Y. 183; *Matter of Westerfield*, 163 N. Y. 209; *Spies* v. *Lockwood*, 165 N. Y. 481; *Livingston* v. *City of Albany*, 161 N. Y. 602.) Upon an appeal from an order of reversal the Court of Appeals cannot review a decision of an Appellate Division upon a question of fact, if there was any evidence to support the conclusion of the Appellate Division. (*Edson* v. *Bartow*, 154 N. Y. 215; *Livingston* v. *City of Albany*, 161 N. Y. 602; *Steinway* v. *Steinway*, 163 N. Y. 183; *Martin* v. *Funk*, 75 N. Y. 134; *Mabie* v. *Bailey*, 95 N. Y. 206; *Farleigh* v. *Cadman*, 159 N. Y. 169; *Jenkins* v. *Baker*, 77 App. Div. 509; *Scott* v. *Harbeck*, 49 Hun, 292; *Robertson* v. *McCarty*, 54 App. Div. 103; *Williams* v. *Savings Bank*,

51 App. Div. 337; *Marsh* v. *Keogh*, 82 App. Div. 503.)
The reversal by the Appellate Division herein, upon the law,
was warranted by errors committed by the referee, in refusing
to make conclusions of law proposed by claimant, and in
refusing to make findings of fact proposed by claimant, and
in making other findings of fact and conclusions of law in the
referee's report herein contained, which were not warranted
by the record. (*Farleigh* v. *Cadman*, 159 N. Y. 169; *Bd.
of Missions* v. *M. S. Bank*, 40 App. Div. 120; *Robertson*
v. *McCarty*, 54 App. Div. 103; *Martin* v. *Funk*, 75 N. Y.
134; *Mabie* v. *Bailey*, 95 N. Y. 209; *Jenkins* v. *Baker*, 77
App. Div. 509; *Matter of Barefield*, 82 App. Div. 463;
*Marsh* v. *Keogh*, 82 App. Div. 503.) No question is pre-
sented by the record or by appellant's notice of appeal herein
which this court can review, and no question of law is raised
by an exception taken by appellants at the trial of the issues
herein. (*Kingsland* v. *Murray*, 133 N. Y. 170.)

VANN, J. The first question presented relates to our juris-
diction to hear the appeal. As the reversal was upon the
facts as well as the law, if there was a material question of
fact we cannot consider the action of the Appellate Division
in determining it, for we are confined by the Constitution to
the review of questions of law. (*Matter of Thorne*, 162
N. Y. 238.) The court below exercised its appellate jurisdic-
tion by reversing the decree of the surrogate and its original
jurisdiction by allowing the claim in controversy, and if
either involved the decision of a question of fact we have no
jurisdiction of the appeal. (*People ex rel. Cornell Steamboat
Company* v. *Dederick*, 161 N. Y. 195; Code Civ. Pro.
§§ 191, 2586 and 2587.) The Appellate Division, however,
cannot create a question of fact by declaring that there is one
and our first duty is to examine the evidence to see whether
it presents a material question of fact. If it does our juris-
diction is ended, but if it does not we can review the ques-
tions of law duly raised by exception and see whether they
authorized the Appellate Division to reverse the decree of

the surrogate. (*Otten* v. *Manhattan Railway Company*, 150 N. Y. 395, 401.) While there is no conflict in the evidence, if the established facts permit such diverse inferences that one reasonable mind could infer that a controlling allegation was true, while another reasonable mind could infer that it was untrue, a question of fact arises, the determination of which we have no power to review. If, however, the inferences from the uncontradicted evidence all point in one direction, so that no reasonable mind could reach but the one conclusion, there is no question of fact and we are not divested of jurisdiction. The unanimous vote of the judges below has no controlling effect because the findings of the referee and surrogate were not affirmed but were reversed.

Beginning in 1886 the decedent and her sister Angelica each had numerous accounts in the Irving Savings Institution, the greater part in the name of the former individually, or as trustee. At various times there were sixteen of the latter class. While no single account in the name of the decedent ever exceeded $3,000 the aggregate amount of all her accounts always exceeded that sum and occasionally by several thousand dollars. At the same time many accounts were kept by her in other savings institutions, some in her own name simply and others with the addition of " trustee for " or " in trust for " some person named. It was her practice to draw from all these accounts at will, whether they were kept in her name as trustee or otherwise, and to close them and open others as she saw fit. She kept the pass books and no beneficiary named in any account ever drew therefrom except upon drafts signed by her. When she died intestate in March, 1900, accounts were outstanding in her name as trustee in favor of Emile R. Lattan and three other persons and they had the benefit thereof without controversy.

On the 2nd of January, 1886, the decedent opened an account in the Irving Savings Institution by depositing the sum of $355. A rule of the bank required the depositor to give the name of the person for whom he wished to place the money in trust, but the one making the deposit had absolute

control of the account so long as he retained possession of the pass book. The pass book was numbered 42,728 and the deposit was entered thereon as well as on the books of the bank as an account with Fanny A. Lattan, trustee for Emile R. Lattan, depositor. At some time, but it does not appear when except that it was prior to May, 1893, the words "Trustee for Emile R. Lattan" were canceled by rulings in red ink. As at first entered in the ledger of the bank the account stood as at first entered on the pass book, but when carried forward to a new ledger in 1892 it stood as an account with the decedent individually. When she opened this account she had between $6,000 and $7,000 standing in her name individually and as trustee on the books of the same bank. Two other deposits were made in this account, the first of $5.10 on July 1st, 1886, and the second of $740, September 21st, 1886. Twelve drafts were drawn against it at various times. The first, dated January 27th, 1886, for $100 in favor of Lewis H. Lattan, was signed by the decedent as trustee, but all the rest, commencing with September 19th, 1890, were signed by her individually. July 8th, 1898, the account was closed by her individual draft for $1,104.06 and the pass book was surrendered. With the amount thus drawn she opened two new accounts in the same bank, the first No. 66,807 in favor of Fanny A. Lattan in trust for Rosalie M. Beam for the sum of $552.03, and the other No. 66,808 in favor of Fanny A. Lattan in trust for Emile R. Lattan for the same amount. Both of these accounts remained open at the time of the decedent's death and the pass books were delivered by her administrator to the parties named who drew the money accordingly. During the existence of account No. 42,728 the decedent at all times had possession of the pass book and Emile R. Lattan received no part of the moneys deposited to the credit of that account except as already mentioned.

On the 19th of September, 1890, the decedent had ten accounts amounting to between $8,000 and $9,000 standing in her name, individually or as trustee, on the books of the Irving Savings Institution. On that day she opened account

No. 51,556 in that bank by depositing $462.03 in her name
as trustee for Emile R. Lattan. Said amount was largely
made up of sums drawn from other accounts in her name as
trustee. She retained possession of the pass book, and no one,
except herself and the officers of the bank, appears to have
known of the existence of the account until after her death.
September 19th, 1892, she deposited $100 in that account
and September 13th, 1893, the further sum of $80.60.
When it was closed on the 15th of November, 1894, it
amounted with interest to $733.30, which she drew out and
deposited in another account, in her name as trustee for Lewis
H. Lattan, who after her death drew the amount thereof.

Emile R. Lattan was the son of Lewis H. Lattan, a spend-
thrift, who in 1884 turned over to his sisters Angelica Lattan
and the decedent all his property, worth about $20,000, for
their management, but without instructions as to their course
in managing the same. No accounting was ever made to
him with reference thereto, although he survived them both.

There was no evidence that the decedent ever spoke to any
one about any of these accounts or stated what her intention
was in opening them. The accounts in question were opened
with her own money and no part thereof came from her brother
Lewis. Out of thirty-one accounts in seven savings banks
she paid over to the alleged beneficiaries the balance left
when two thereof were closed, but in both of these instances,
as well as in all other cases, she treated the accounts as her
own, drawing against them and making new deposits from
time to time as she thought best. All the pass books with a
trust heading, containing accounts which had not been closed
when the decedent died, were delivered to the respective
beneficiaries who drew the balance on hand. Emile R. Lattan
did not know of the existence of any accounts on which he
relies in this proceeding until more than a year after the dece-
dent died. Angelica Lattan, who was appointed and qualified
as administratrix, died on the 10th of April, 1901, leaving the
administrator as the sole representative of the estate. The
personal property of Fanny A. Lattan was inventoried at the

sum of $32,950.08, but owing to increase in values the amount on hand at the date of the final decree of distribution was more than $40,000.

The most favorable view of these facts and others of like character not mentioned does not permit the inference as matter of fact that the decedent in making the deposits in question intended to establish an irrevocable trust in favor of the respondent.    Aside from what took place when the deposits were made, every act of the decedent, with one exception, is opposed to the theory of a trust.    That exception is the closing of one account after the words of trust had been can celed and the deposit of part of the proceeds in the same form as the original.    This is not enough when considered with the other facts to establish an irrevocable trust.    (*Cunningham* v. *Davenport*, 147 N. Y. 43.)   No connection was shown between any deposit and the sum held in trust by the decedent and her sister Angelica for Lewis II. Lattan, who is still living and was sworn as a witness at the trial.    A deposit in favor of the son would not have satisfied the claim of the father in the absence of a request from the latter, of which there was no evidence.    In view of the practice of the decedent in doing business with savings banks, the custom of many other persons in that regard, the various objects which people have in making deposits in the form of a trust, the retention of the pass book with the corresponding control of the deposits according to the rules of the bank, the subsequent history of the various accounts with the frequent withdrawals and changes, we think that the form of the deposits as they appear upon the books was not strengthened by the other evidence. There was no question of fact in the case and the Appellate Division had no power to reverse upon the facts.    We find no exception in the record warranting a reversal upon the law, unless the exception to the conclusion of the referee and surrogate that the claim should be dismissed upon the merits raises reversible error.    This involves the question whether upon the conceded facts, as matter of law, an irrevocable trust was established.

Savings bank trusts, as they are sometimes called, have frequently been before the courts during the past few years. When we considered the pioneer case but few instances of deposits in trust were known and a liberal rule was laid down without the limitations which later cases required. After a while when it became a common practice for persons to make deposits in that form, in order to evade restrictions upon the amount one could deposit in his own name and for other reasons, the courts became more conservative and sought to avoid unjust results by adapting the law to the customs of the people. A brief review of the cases will show how the subject has been gradually developed so as to accord with the methods of the multitude of persons who make deposits in these banks.

The case of *Martin* v. *Funk* (75 N. Y. 134) arose more than a quarter of a century ago when savings bank trusts were in their infancy. A lady had made a deposit of her own money to the amount of $500 in a savings bank, declaring that she wished the account opened in trust for the plaintiff, a distant relative. Entry was made accordingly on the books of the bank and on the pass book, which was delivered to the depositor and retained by her until her death. At the same time she deposited a like amount in the same manner in trust for a sister of the plaintiff. No change was made in either account except that the depositor drew out the interest for one year and no other act or declaration bearing on her intention was shown. Neither the plaintiff nor her sister knew anything of either deposit until the depositor died nine years after the account was opened. It was held that a trust was created and that the plaintiff was entitled to the money standing to the credit of the account.

That case was followed and the same judgment pronounced in *Willis* v. *Smyth* (91 N. Y. 297), where the facts were similar, except that the trust was in favor of a daughter and the first deposit of $288 was nearly all drawn out before the last deposit of $2,000 was made. The depositor retained the pass book and the money remained on deposit until her death,

although she once offered to lend it. At the date of the last deposit she opened an account of $25 in trust for a grandchild.

The facts tending to establish a trust were much stronger in *Mabie* v. *Bailey* (95 N. Y. 209), where the beneficiary had judgment. The depositor showed the pass book then in question to the mother of the plaintiff, who was his step-daughter, as well as other pass books in favor of other relatives. In subsequent conversations he recognized the deposits as a provision for the family "and no change of intention on his part was indicated." The question left undecided in *Martin* v. *Funk*, whether "surrounding circumstances may not be shown to vary or explain the apparent character of the acts and the intent with which they were done," was not expressly decided, but it was said "that the character of such a transaction as creating a trust is not conclusively established by the mere fact of the deposit, so as to preclude evidence of contemporaneous facts and circumstances constituting *res gestæ*, to show that the real motive of the depositor was not to create a trust, but to accomplish some independent and different purpose inconsistent with an intention to divest himself of the beneficial ownership of the fund."

In these cases all the money claimed by the respective plaintiffs was left in the bank until the death of the depositor, the sums withdrawn not being in issue. When the next case arose the court realized from the condition of business and the frequency of deposits in trust that conservative action was necessary in order to avoid subversion of the real intention of the depositor, and from that time forward the general doctrine laid down in *Martin* v. *Funk* was carefully limited. Thus, in *Beaver* v. *Beaver* (117 N. Y. 421) the deposit was by a father of his own money in the name of his son seventeen years of age. The father retained the pass book, deposited more money to the credit of the account and drew out some. The son died over twenty years after the first deposit without knowing anything about any of the deposits. Subsequently, the father died and it was held that the facts shown would not permit the inference that either a trust or a

gift was established. Judge ANDREWS said : "There was no
declaration of trust in this case, in terms, when the deposit
of July 5th, 1866, was made nor at any time afterwards, and
none can be implied from a mere deposit by one person in the
name of another. To constitute a trust there must be an
explicit declaration of trust or circumstances which show
beyond reasonable doubt that a trust was intended to be
created. It would introduce a dangerous instability of titles if
anything less was required, or if a voluntary trust *inter vivos*
could be established in the absence of express words, by cir-
cumstances capable of another construction or consistent with
a different intention  *  *  * It may be justly said that a
deposit in a savings bank by one person of his own money to
the credit of another, is consistent with an intention on the
part of the depositor to give the money to the other. But it
does not, we think, of itself, without more, authorize an
affirmative finding that the deposit was made with that intent,
when the deposit was to a new account, unaccompanied by
any declaration of intention, and the depositor received at the
time a pass book, the possession and presentation of which by
the rules of the bank known to the depositor, is made the evi-
dence of the right to draw the deposit. We cannot close our
eyes to the well-known practice of persons depositing in sav-
ings banks money to the credit of real or fictitious persons,
with no intention of divesting themselves of ownership. It is
attributable to various reasons ; reasons connected with taxa-
tion ; rules of the banks limiting the amount which any one
individual may keep on deposit; the desire to obtain high
rates of interest where there is a discrimination based on the
amount of deposits, and the desire on the part of many persons
to veil or conceal from others knowledge of their pecuniary
condition. In most cases where a deposit of this character is
made as a gift, there are contemporaneous facts or subsequent
declarations by which the intention can be established, inde-
pendently of the form of the deposit. We are inclined to
think that to infer a gift from the form of the deposit alone
would, in a great majority of cases, and especially where the

deposit was of any considerable amount, impute an intention which never existed and defeat the real purpose of the depositor." (See, also, *Matter of Bolin*, 136 N. Y. 177, and *Sullivan* v. *Sullivan*, 161 N. Y. 554.) In the former case the deposit was first made in the name of the depositor, but the money was afterward withdrawn and deposited to the account of " Julia Cody or daughter, Bridget Bolin." The court said that "in the absence of other evidence, the transaction simply evidenced a purpose of the depositor of the moneys that they should be drawn out by either of the persons named. * * * The evidence must show that the donor intended to divest herself of the possession of her property and it should be inconsistent with any other intention or purpose."

The facts and the law in the next case to which we wish to call special attention are well stated in the syllabus, as follows : " An irrevocable trust in favor of another than the depositor is not established where the facts disclosed are to the effect that a depositor opened an account in a savings bank in his own name ; that he thereafter changed it to his own name in trust for his brother ; that the brother subsequently died and three days thereafter the depositor changed the account back to his own name ; that the depositor at all times retained possession of the bank books until delivered up to the bank ; that the brother was not informed of the account and the depositor is alive, denying the trust and claiming never to have intended to give the money represented by the account to his brother, nor to have ever intended it for his benefit, although the depositor does not disclose his reasons for opening the account in trust for his brother." Judge BARTLETT, in writing for all the judges, distinguished the early cases and said : " The doctrine laid down by this court in the previous cases amounts to this, that the act of a depositor in opening an account in a savings bank in trust for a third party, the depositor retaining possession of the bank book and failing to notify the beneficiary, creates a trust if the depositor dies before the beneficiary, leaving the trust account open and unexplained." (*Cunningham* v. *Davenport*, 147 N. Y. 43, 47.)

When a deposit is made in trust and the depositor dies intestate leaving it undisturbed, in the absence of other evidence, the presumption seems to arise that a trust was intended in order to avoid the trouble of making a will.

*Cunningham* v. *Davenport* was followed in *Matter of Barefield* (177 N. Y. 387), where an alleged savings bank trust was not sustained, but the effect of a simple deposit by one person in his own name in trust for another, although mentioned, was not decided, as there was other evidence bearing upon the intention of the depositor.

In *Haux* v. *Dry Dock Savings Institution* (2 App. Div. 165; affirmed, 154 N. Y. 736) William Haux deposited in the Dry Dock Savings Institution a small sum in trust for three of his children. Subsequently he made other deposits until at the time of his death the account amounted to $3,000. The children died before him and after their death he continued to use the same account, which originally consisted of the savings of all his children, including two not named in the account, but when his deposits in another savings bank amounted to $3,000 he began to deposit all his profits in the Dry Dock Savings Institution. He always retained control of the moneys, and on one occasion withdrew a part. On the same day, when the account in question was opened, he started another in the same bank entitled " William Haux in trust for William Haux," and delivered the pass book to his son, William Haux, Jr., who always retained possession thereof. It was held that there was no intention on the part of the depositor to create a trust in respect to the balance of the first account, which remained in the Dry Dock Savings Institution at the time of his death.

In *Farleigh* v. *Cadman* (159 N. Y. 169, 171) the deposit was the result of a family arrangement for the benefit of the plaintiff, who was duly informed of it, and was present when the account was opened accordingly.

*Washington* v. *Bank for Savings* (171 N. Y. 166) is suggestive in its facts, but as it turned wholly upon a question of evidence no further allusion to it will be made.

In *Robinson* v. *Appleby* (69 App. Div. 509 ; affirmed, 173 N. Y. 626) Helen C. Pratt deposited $2,695 in a savings bank and received a pass book headed, " Helen C. Pratt in trust for Freddie Hemingway Robinson." She made several deposits in and withdrawals from the account, and on May 31st, 1893, when the amount on deposit was $2,740, she surrendered the pass book and transferred the balance to a new account headed, " Helen C. Pratt in trust for Freddie H. Robinson. Note — Not to be paid to F. H. R. until he is 30 years of age." She also signed the following paper : " I desire to open an account with the Riverhead Savings Bank in my name in trust for Freddie H. Robinson. Said account to be governed by the by-laws, rules. and regulations of the savings institution. After my death the balance then due on said account is not to be payable to said Freddie H. Robinson until he is 30 years of age." The second pass book was never given to Mrs. Pratt, but was retained by the bank. On the 20th of January, 1894, Freddie H. Robinson died and four days later Mrs. Pratt withdrew the entire deposit. In this case the written declaration was so full and explicit that we had no difficulty in sustaining the trust as irrevocably established when that paper was signed and delivered to the bank as custodian of the trust fund. There was much more than a mere deposit in the name of one person in trust for another, for an independent instrument was executed which not only declared the intention of the depositor, but directed when the account was to be paid to the beneficiary.

While we have considered we do not cite the numerous cases decided by the Supreme Court bearing upon the question, owing to the conflict in the opinions of learned justices in different appellate divisions. It is necessary for us to settle the conflict by laying down such a rule as will best promote the interests of all the people in the state. After much reflection upon the subject, guided by the principles established by our former decisions, we announce the following as our conclusion : A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irre-

vocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor. This rule requires us to reverse the order of the Appellate Division and to affirm the decree of the surrogate, with costs to the appellants in all courts.

PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN, CULLEN and WERNER, JJ., concur.

Order reversed, etc.