Argued April 14, affirmed June 17, 1954

## GORDON, Executrix *v.* PORTLAND TRUST BANK

271 P. 2d 653

*Irving Rand,* of Portland, argued the cause for appellant. With him on the briefs was George W. Mead, of Portland.

*H. H. Phillips* argued the cause for respondent. On the brief were Phillips, Coughlin, Buell & Phillips, of Portland.

Before LATOURETTE, Chief Justice, and LUSK, TOOZE and PERRY, Justices.

.LUSK, J.

This is an action at law brought by Leotta Belle Gordon as executrix under the last will and testament of Albert Leslie Gordon, deceased, to recover the sum of $26,352.75 from the Portland Trust Bank, a banking

corporation. Judgment for defendant was entered after a demurrer to the complaint had been sustained. Plaintiff appeals.

As the complaint discloses, the money involved is the proceeds of fifteen policies of insurance upon the life of Albert Leslie Gordon, deceased, which he delivered to the bank pursuant to the terms of an instrument in writing, executed by Gordon as trustor and the bank as trustee. Gordon caused the bank to be designated beneficiary under the insurance policies, and after his death the bank collected the proceeds of the policies, which it claims the right to hold and to distribute in accordance with the provisions of the trust agreement.

It is the theory of the plaintiff that the trust agreement is actually a "testamentary disposition or Last Will and Testament", and that it was revoked by a will executed by Gordon four days later under which Mrs. Gordon has been appointed executrix.

The trust instrument, a copy of which is made an exhibit to the complaint, is dated August 3, 1942. It recites that the parties, Gordon as trustor and the bank as trustee, have agreed that the bank has been designated beneficiary as trustee under the policies of life insurance enumerated in an attached schedule for the uses and purposes thereinafter stated. The bank agreed

"To hold said insurance policies during the life of the Trustor without any duties of any nature in respect thereto other than the safekeeping thereof; it being expressly agreed that the said Trustee shall not in any event be obliged or required to pay any premium, assessment or other sum that may become due or payable on any of the said policies. In no event is it the intention of the parties hereto that

this agreement should restrict the rights of the Trustor under any policy contained in this trust, the Trustor reserving the right to obtain loans under any policy or to surrender any policy for the cash surrender value, or to exercise any other right or option under the said insurance policies, this trust becoming effective only insofar as the said insurance policies are concerned upon the death of the Trustor.

"Upon the Trustee receiving proof of the death of the Trustor, it is agreed that it will use its best efforts to collect and receive any and all sums of money payable thereunder, the receipt of said Trustee to be a full and complete release to any insurance company for any and all funds paid to the said Trustee as beneficiary under the said insurance policy or policies which may be hereafter deposited."

Other pertinent provisions follow: After paying the expenses incurred in managing the trust estate and deducting the same from the gross income, the trustee shall distribute the net income of the trust estate in quarterly installments to the trustor's wife, Leotta Belle Gordon, until her death or remarriage, and, upon the happening of either of those events, the trustee shall distribute the corpus equally between the trustor's two daughters, with further provisions for the contingencies of the death of either or both daughters before the death or remarriage of the widow.

"The Trustor shall have power at any time during his life by an instrument in writing delivered to the Trustee to modify, alter or terminate this agreement, in whole or in part, provided, however, that the duties, powers and liabilities of the Trustee hereunder shall not be substantially changed without its written consent."

The trustee shall not in any event be obliged or required to pay any premium, assessment or other

sum that may become due or payable on any of the said policies; and it shall not be obliged to bring suit to collect the principal amount on any of the policies unless properly indemnified, the sole obligation and liability of the trustee being to receive, manage and dispose of such money as may be paid to it under the said policies:

> "In the event that the said Trustor shall at any time after having designated said Trustee as beneficiary under said policies, subsequently cause such designation to be changed so that another beneficiary be named or other payment of the proceeds of such policies provided, this trust, and all rights and obligations hereunder, shall as to such policy or policies thereupon become null and void for every purpose, and said Trustee shall as to such policy or policies be released from all liability and obligation."

The agreement also contains a section entitled "Open Trust Clause" under which the trustor was authorized to deposit with the trustee securities, personal property and sums of money, and to deed to the trustee real property, which would become part of the trust res, but there is nothing to show that any property of any kind was ever added to the trust res in pursuance of this authority.

The question raised by this appeal is before this court for the first time, though it has been extensively litigated in other jurisdictions and has been the subject of a good deal of discussion by textwriters and commentators. See, e.g., Hanna, "Some Legal Aspects of Life Insurance Trusts" (1930), 78 Univ Pa L Rev 346; 1 Scott, Trusts 345 et seq.; 2 Bogert, Trusts and Trustees §§ 238, 239; Grahame, "The Insurance Trust as Non-testamentary Disposition" (1934), 18 Minn L

Rev 391. A brief historical account will aid to an understanding of the problem.

It should be noted that life insurance, and its natural concomitant, the insurance trust, did not become popular in the United States until the latter half of the nineteenth century. At that time the doctrine of the third-party beneficiary had not developed as yet and the status of the beneficiary under an insurance policy was defined in several early cases, notably in *Washington Central Bank v. Hume,* 128 US 195, 9 S Ct 41, 32 L Ed 370, as follows:

> "It is indeed the general rule that a policy, and the money to become due under it, belong, at the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance by any act of his, by deed or by will, to transfer to any other person the interest of the person named."

In other words, the beneficiary was held to be the recipient of the benefits of an irrevocable trust. To the same effect see, *Mutual Benefit Life Ins. Co. v. Cummings,* 66 Or 272, 285, 126 P 982, 133 P 1169, 47 LRA (ns) 252, Ann Cas 1915B 535. Several prior state court decisions in New Jersey, Connecticut and Louisiana had already established the rule that a donee-beneficiary held a vested interest which could not be defeated by the insured, who was the promisee under the insurance contract. These cases are collected and exhaustively analyzed by Professor Vance in his article, "The Beneficiary's Interest in a Life Insurance Policy" (1922), 31 Yale L J 343. The early cases were soon buttressed by many others which followed in quick succession. See cases cited in 4 Cooley, Briefs on Insurance (2d ed) 3755; 3 A & E Enc Law

(2d ed) 980. Whether the beneficiary was looked upon as the recipient of a trust, or whether the policy was considered a gift of a chose in action, the important thing in these early cases is that the beneficiary was declared to be the owner. This view is entirely understandable in the light of the provisions of life insurance contracts then written. There were no loan or cash values, no extensive powers of assignment or change of beneficiary.

The older rule which gave a vested interest to the beneficiary does not, of course, square with the modern notions of life policies. In modern times, the real incidents of ownership are indisputably vested in the insured and it was only logical that many courts should take the position that the beneficiary, where he is subject to divestment at the mere whim of the insured, takes only a contingent interest or an expectancy. Thus, today there is considerable authority for the view that the beneficiary gets a vested right only as his expectancy or contingent interest matures on the death of the insured. *Grosz v. Grosz,* 151 Or 438, 450, 50 P2d 119; *Grimm v. Grimm,* 26 Cal2d 173, 157 P2d 841; *Shay v. Merchants Banking Trust Co.,* 335 Pa 101, 6 A2d 536; 46 CJS 62-63, Insurance § 1173 (2), notes 15, 16; 27 Am Jur 952, Insurance § 1276. But the courts are by no means in accord on the issue. Many hold that the beneficiary takes a vested interest subject to divestment upon change of beneficiary in accordance with the provisions of the policy. *Roberts v. Northwestern Life Nat. Ins. Co.,* 143 Ga 780, 85 SE 1043; *Indiana Nat. Life Ins. Co. v. McGinnis,* 180 Ind. 9, 101 NE 289; *Metropolitan Life Ins. Co. v. Woolf,* 138 NJ Eq 450, 47 A2d 340; *Wodell v. John Hancock Mut. Life Ins. Co.,* 320 Mass 1, 67 NE2d 469. Where this view obtains, there is no problem concerning the testa-

mentary aspect of the transaction, for the vested right of the beneficiary is without doubt a proper subject for a trust. Restatement, Trusts § 57, comment f, p. 178; § 84, comment b; *Fidelity Title & Trust Co. v. Graham,* 262 Pa 273, 105 A 295.

Under the general view that the beneficiary has no more than an expectancy, it is more difficult to find the necessary res for a present trust. Rather, the transaction appears to be a contract with the trust-beneficiary to create a trust at the insured's death. The courts, however, have not felt constrained to arrive at this conclusion, and the cases are legion which have upheld the usual form of unfunded insurance trust even where the court had previously announced that the beneficiary has no more than a mere expectancy. In some of the earlier cases, the rationale appeared to be that, since a life insurance policy payable to an ordinary third-party beneficiary is not testamentary, then neither is one wherein the third-party beneficiary is also trustee, for in both cases the legal title to the proceeds is in the beneficiary according to the doctrine of the third-party beneficiary as it has developed in the law of contracts. In the insurance trust device, the trustee-beneficiary takes a divided interest in the property, but this is specifically a trust problem and has no bearing on the testamentary character of the device. This view was adopted by the New Jersey court in the well-known case of *Bose v. Meury,* 112 NJ Eq 62, 163 A 276, and also by the Illinois court in *Gurnett v. Mutual Life Ins. Co.,* 356 Ill 612, 191 NE 250. We observe, therefore, that both under the old view, where the beneficiary is considered the owner, and under the new view where he has only an expectancy, the result is the same, for even in the new view, the third-party beneficiary has a present

right to fulfillment of the insurer's promise to pay. There is no inconsistency in this position. A right of revocation of the trust deed in the case of any trust cannot really be distinguished from the power reserved by the insured to change the beneficiary. The extent of control reserved to the donor and the insured is the same in both cases, and the vested interest of the beneficiary of the ordinary trust is not open to question, despite the fact that the donor might revoke the trust at his pleasure. See, *Allen v. Hendrick,* 104 Or 202, 224, 206 P 733. A close analogy is found in the so-called "Totten" or tentative savings bank trust, under which complete control is likewise reserved by the donor during his lifetime, but the beneficiary is permitted to take the money on his death. See, Matter of Totten, 179 NY 112, 71 NE 748.

This court, having carefully reviewed the cases, is of the opinion that the insurance trust attacked in this case can be sustained without deciding that the beneficiary-trustee has either vested rights or a mere expectancy. We perceive that some courts have taken steps to avoid the pitfalls of this particular aspect of the insurance trust problems. Some have resolved the problem by calling the right of the beneficiary a contingent interest which is something more than a mere expectancy, yet something less than a vested interest. See, e.g., *Hirsch v. Auer,* 146 NY 13, 40 NE 397; *Kerr v. Crane,* 212 Mass 224, 98 NE 783. These cases, it should be noted, were decided at a time when the life policies in question had none of the modern features such as cash rights, borrowing, reserves, etc. Our own view is that the ownership of the modern policy is actually divided between the beneficiary and the insured. The various marketing or sales features, such as the loan and cash surrender values, are clearly the

property of the insured. On the other hand, the beneficiary is the owner of a promise to pay the proceeds at the death of insured, subject to insured's right of revocation. It seems to us that the right of the beneficiary is actually the primary right under the policy, whereas the insured's rights are secondary and have nothing to do with the basic purpose of life insurance. It has been pointed out that a life policy is an anomalous thing when it is separated from its primary object and obligation, namely, to pay the beneficiary the amount of the policy at the death of the insured. See, Boughton, "Creditors and Surrenders" (1926), 3 Association of Life Insurance Counsel Proceedings 311.

The rule that the beneficiary takes rights of his own rather than those of the settlor-insured was recognized in *Bose v. Meury*, supra. In answer to the claim that the insurance trust was testamentary, the court said:

"The proceeds are the fulfillment of promises by the insurance company to the Montclair Trust Company, trustee, to pay the stipulated sums, upon the death of the insured. The insured paid the consideration for the promises at will, but when the day came—the insured's death—the obligations of the insurance company were due to the Montclair Trust Company, trustee. *Its source of title was the promise in the policies, not the trust agreement.* (Italics added.)

Under the above language the trust was sustained. The court also held, and we are in agreement, that actually the beneficiary is the one who declares the trust where he has been named trustee. This view is supported by several other cases. See, *Lashley v. Lashley*, 212 Ala 255, 102 So 229; *Makowiec v. Prudential Life Ins. Co.*, 83 NH 547, 145 A 269.

It follows from the foregoing analysis of the nature and incidents of an insurance trust that Mr. Gordon intended to, and did, transfer to the bank a present interest in the insurance policies (*Allen v. Hendrick,* 104 Or 202, 225, 206 P 733), and that the plaintiff's contention that the instrument is testamentary in character, rather than a trust, must fail.

The judgment is affirmed.