JOHN ASHLEY WASHAM, A MINOR *v.* FIRST NATIONAL BANK, ADMINISTRATOR ET AL

5-5288                                                    455 S. W. 2d 96

Opinion delivered June 15, 1970

*Pickens, Pickens & Boyce,* for appellant.

*Hodges, Hodges & Hodges,* for appellees.

GEORGE ROSE SMITH, Justice. This case, like many earlier ones, involves a joint bank account that was not set up either in compliance with the statute or in a form precisely similar to any account that we have considered in a previous decision. Here the litigation is between the estate of Don - Washam, Jr., deceased, and his son, the appellant, now eleven years old. This appeal is from a probate court judgment- holding that the plaintiff-appellee First National Bank, as administrator of the elder Washam's estate, is entitled to the entire account.

The facts are comparatively simple and wholly undisputed. On June 10, 1968, Don Washam, Jr., opened the savings account in question by depositing $29,324.40 in the First National Bank of Newport. On the signature card the title of the account was listed as "John A. Washam, a minor" (who was then nine years of age). However, the only authorized signature entered on the card was that of Don Washam, Jr., after which the bank typed the word "father."

Ten months later, on April 9, 1969, Don, Jr., had the bank add his name to the title of the account, which thereafter appeared as "John A. Washam, a minor or Don Washam, Jr.," Both before and after that change Don, Jr., made withdrawals freely—some by signing withdrawal slips and some by telephoning instructions to the bank. Usually the withdrawal was simply transferred to Washam's personal checking account, but in one instance he had $4,700 transferred to an account designated as "Buddy's Used Cars," explaining to the bank that "we are getting into the used car business." At Washam's death on July 18, 1969, the amount remaining in the account was $17,412.76. The bank then allowed the minor's guardian to withdraw the whole account, but in this litigation the probate court awarded it to Washam's estate.

We agree with the trial court's decision. At the

outset counsel for the appellant candidly concede that no right of survivorship was created pursuant to the controlling statute, because Washam failed to "designate in writing" that the account should be so held. Ark. Stat. Ann. § 67-552 (Repl. 1966), as construed in *Cook v. Bevill,* 246 Ark. 440 S. W. 2d 570. Nor did Washam attempt to designate in writing a tenancy in common, as contemplated by subsection (c) of that statute.

Absent survivorship, counsel perforce argue that their youthful client acquired title to the account during his father's lifetime. One suggestion is that the older Washam completed a gift to his son either when he opened the account originally or when he added his own name to the title of the account. The fatal defect in that theory is that the father retained complete control over the account from its inception until his own death. Hence there was lacking the essential requirement that a valid gift be unconditionally delivered to the donee. *Umberger* v. *Westmoreland,* 218 Ark. 632, 238 S. W. 2d 495 (1951); *Bennett* v. *Miles,* 212 Ark. 273, 205 S. W. 2d 451 (1947). In fact, we have rejected the notion of a gift where the depositor reserved the right to draw against the account and freely exercised that right. *Peters* v. *Goodwin,* 190 Ark. 24, 76 S. W. 2d 980 (1934).

Alternatively, it is suggested that Washam's original deposit in his son's name created a tentative trust under the doctrine announced in *Matter of Totten,* 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711 (1904). That doctrine, however, recognizes the creation of a trust only as a result of a savings deposit made by one person in his name as trustee for another. The transaction in the case at bar did not meet the minimum requirements for such a trust. Restatement, Trusts (2d), § 58 (1959).

Affirmed.