494 So.2d 619 (1986)
Oscar F. UNDERWOOD III, as Executor of the Estate of Oscar F. Underwood, Jr.
v.
BANK OF HUNTSVILLE and Irene Shelton Underwood.
84-720.
Supreme Court of Alabama.
July 18, 1986.
Rehearing Denied September 12, 1986.
M.U. Griffin of Griffin & Griffin, Huntsville, for appellant.
David H. Meginniss of Hornsby, Blankenship, Robinson, & Meginniss, Huntsville, for appellees.
TORBERT, Chief Justice.
This case was originally filed in the Madison County Circuit Court by the Bank of Huntsville (hereinafter "Bank") as an interpleader and declaratory judgment action. The Bank sought a determination of the ownership of funds in a certificate of deposit (CD) denominated "Mr. Oscar F. Underwood as Custodian for Irene Underwood." The Bank's pleadings named as defendants Oscar F. Underwood III, executor of the Underwood estate, and Mrs. Irene Underwood. The trial court determined that Mrs. Underwood was entitled to the funds in the CD, and Mr. Underwood, for the estate, appeals.
On October 18, 1977, Oscar F. Underwood went to the Bank and deposited $40,000 into a CD made payable to "Mr. Oscar F. Underwood as Custodian for Irene Underwood." Irene Underwood, the wife of Oscar F. Underwood, did not see this CD until after Mr. Underwood's death, but she did testify that he had told her of its existence and that it was made in her name.[1] *620 From November 1979 until March 1983, the funds of the CD were pledged as collateral for a series of five loans from the Bank. Some of these loans were to Mr. Underwood or to his son (Oscar F. Underwood III) and daughter-in-law. Mrs. Irene Underwood was unaware that the CD's funds had been pledged as collateral for any of the loans. After Mr. Underwood's death, the Bank filed a claim against his estate for the unpaid balance of the loans that were in default. When the parties could not reach an agreement on the distribution of the funds, the Bank filed the instant interpleader and declaratory judgment action.
The trial court, without a jury, heard evidence presented ore tenus and entered a judgment declaring that Mrs. Underwood was entitled to the funds of the CD. As the basis for its judgment, the trial court concluded: (1) The word "custodian" has a meaning connoting the holding of property for the benefit of another, and therefore, Mr. Underwood was not the owner of the funds at the time of his death; (2) The pledging of the CD's fund as collateral for the loans violated Mr. Underwood's fiduciary duty as a "custodian" and was improper; (3) Under the "passive trust doctrine," title to the funds of the CD vested in Mrs. Underwood immediately upon the deposit of the funds, since the trustee ("custodian") had no duties imposed upon him; (4) A trust was created by the terms of the deposit and there was no provision by which it could be revoked by the settlor; and, (5) The Bank had notice of the trust nature of the CD, and therefore could not have properly extended credit to Mr. Underwood upon the belief that he owned the CD's funds.
Although the appellant, Mr. Oscar Underwood III, for the estate, has presented several issues for review, his main contention is that the trial court erred in not finding that a "tentative" trust had been created by Mr. Underwood's actions in creating the certificate of deposit. The "tentative" trust advocated by the appellant is more commonly referred to as a "Totten trust" after the leading case that adopted this form of a trust. In re Totten, 179 N.Y. 112, 71 N.E. 748 (1904). In reviewing its past decisions, the Totten court realized that there was a conflict in a number of its cases on how to deal with a deposit of money into an account in the form of "depositor, in trust for beneficiary."[2] In order to end the conflict and confusion in this area of the law, the Totten court set forth the following rule of law:
"A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."
179 N.Y. at 125-26, 71 N.E. at 752.
Since its recognition by New York in 1904, the concept of the "Totten trust" has been adopted in at least 18 jurisdictions. See, Estes, In Search of a Less Tentative Totten, 5 Pepperdine L.Rev. 21, 26 n. 21 (1977). However, the concept has not been adopted in Alabama and apparently has not been addressed by this Court since the Totten opinion was released. There is, however, one case in Alabama decided prior to the Totten decision that has addressed a similar problem, and we find it to be dispositive of the appellant's contention.
In Sayre v. Weil, 94 Ala. 466, 10 So. 546 (1891), the defendant Weil maintained an account in a "banking house" which contained *621 the sum of $1,038.42. The account, which was entitled "D. Weil, trustee for the Goldman children," had been opened by the defendant with his own money, and the defendant had deposited money into the account over a period of several years. In July 1891, the defendant and the "banking house" reached an agreement to apply the funds in this account to a pre-existing debt owed by the defendant to the "banking house." The debt was then assigned to the plaintiff, who attempted to collect the funds in the account in payment of the debt. With respect to the creation of a trust under these circumstances, i.e., a deposit of money into a bank account, this Court stated:
"If by language clear and unmistakable, whatever may be the form of expression, a trust is created, as distinguished from a mere intention to create, if nothing remains to be done to perfect the trust, although there is no valuable consideration, courts of equity will uphold and enforce the trust, in the interest of the beneficiary."
94 Ala. at 470-71, 10 So. at 547.
To determine whether a trust had been created, the Court reviewed the opinions from a number of jurisdictions on the same subject. 94 Ala. at 471-74, 10 So. at 548. The Court decided that a majority of the opinions discussed had reached the conclusion that a "deposit in trust" had been created by the depositor's actions and that the trust was irrevocable. Specifically, the Court said: "Under all the authorities, we hold that the trust was completed and irrevocable, and that nothing remained in the trustee but a mere naked legal title." 94 Ala. at 474, 10 So. at 548.
In this case, the trial court found that the facts clearly imply "that a trust was contemplated." This Court has said that for a trust to exist it is essential that the legal title be in one person and the beneficial ownership be in another person. Birmingham Trust & Savings Co. v. Marx, 230 Ala. 68, 73, 159 So. 483, 487 (1935). By the actions taken by Oscar Underwood, legal title to the funds was vested in him and beneficial ownership of the funds was vested in Irene Underwood. The fact that he did not give the certificate of deposit to Irene Underwood, and the fact that he withdrew the interest from the account, did not prevent the creation of a trust or destroy the trust that was created. See, 89 C.J.S. Trust § 54, at 811-12 (1955). And since the settlor of the trust, Oscar Underwood did not expressly reserve a power of revocation, the trust he created was irrevocable. See generally, G. Bogert, The Law of Trusts and Trustees, § 998, at 273 (rev. 2d ed. 1983). See also, Sayre v. Weil, supra.
Having considered the appellant's contention that this Court should adopt the "Totten trust" concept, we decline to take such a step, but instead reaffirm the longstanding rule set forth in Sayre v. Weil, supra. This finding of an irrevocable trust is in complete agreement with the trial court's judgment that Irene Underwood was entitled to the funds of the certificate of deposit. This Court will sustain a trial court's judgment on appeal if any good ground is presented, whether or not that ground was stated in the judgment. See, Dougherty v. Hovater, 425 So.2d 1082, 1084 (Ala.1983). See also, Tucker v. Nichols, 431 So.2d 1263, 1265 (Ala.1983).
Because we have determined that an irrevocable trust was created by Oscar Underwood's actions, we find it unnecessary to address the other issues presented by the appellant. Therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
MADDOX, BEATTY, HOUSTON and STEAGALL, JJ., concur.
JONES, ALMON, SHORES and ADAMS, JJ., dissent.
ALMON, Justice (dissenting).
Rules of law should comport as much as possible with business customs and practices and with the intention of the parties. The majority's rejection of the Totten trust results in a blind rule that would give no weight to these considerations.
*622 The Court of Appeals of New York resolved conflicting treatments of bank deposits in prior New York cases when it decided In re Totten, 179 N.Y. 112, 71 N.E. 748 (1904). It quoted extensively from the cases to explain the development of the rule that the creation of a bank account in the name of the depositor "as trustee for" (or, as here, "as custodian for") another does not automatically create an irrevocable trust. I reproduce portions of that opinion here to show the still-applicable reasons for the rule:
"`[T]he character of such a transaction as creating a trust is not conclusively established by the mere fact of the deposit, so as to preclude evidence of contemporaneous facts and circumstances constituting res gestae, to show that the real motive of the depositor was not to create a trust, but to accomplish some independent and different purpose inconsistent with an intention to divest himself of the beneficial ownership of the fund.'
"... `To constitute a trust, there must be an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created.... It may be justly said that a deposit in a savings bank by one person of his own money to the credit of another is consistent with an intention on the part of the depositor to give the money to the other. But it does not, we think, of itself, without more, authorize an affirmative finding that the deposit was made with that intent, when the deposit was to a new account, unaccompanied by any declaration of intention, and the depositor received at the time a passbook, the possession and presentation of which by the rules of the bank known to the depositor, is made the evidence of the right to draw the deposit. We cannot close our eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons, with no intention of divesting themselves of ownership. It is attributable to various reasonsreasons connected with taxation, rules of the banks limiting the amount which any one individual may keep on deposit, the desire to obtain high rates of interest where there is a discrimination based on the amount of deposits, and the desire on the part of many persons to veil or conceal from others knowledge of their pecuniary condition. In most cases where a deposit of this character is made as a gift there are contemporaneous facts or subsequent declarations by which the intention can be established independently of the form of the deposit. We are inclined to think that to infer a gift from the form of the deposit alone would, in a great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed, and defeat the real purpose of the depositor.'"
Id., 179 N.Y. at 121-23, 71 N.E.2d at 751 (citations omitted).
The source relied on in the law review article cited by the majority shows that at least 21 states and the District of Columbia have adopted the Totten trust. A. Scott, 1 The Law of Trusts, § 58.3, n. 5 (3d ed. 1967 and supp. 1985). Cursory research has disclosed decisions from at least nine additional states accepting the principle that a bank account in this form creates either a Totten trust or no trust at all. Vaughn v. First Federal Savings & Loan Ass'n, 85 Idaho 266, 378 P.2d 820 (1963); Succession of Shadrick, 129 So.2d 606 (La.App.1961); McLain v. McLain, 108 Mich.App. 166, 310 N.W.2d 316 (1981); Concannon v. Winship, 94 Nev. 432, 581 P.2d 11 (1978); Loco Credit Union v. Reed, 85 N.M. 729, 516 P.2d 1112 (1973); Baker v. Cox, 77 N.C. App. 445, 335 S.E.2d 71 (1985); Friedrich v. Bancohio National Bank, 14 Ohio App.3d 247, 470 N.E.2d 467 (1984); Gordon v. Portland Trust Bank, 201 Or. 648, 271 P.2d 653 (1954); Rasmussen v. Oshkosh Savings & Loan Ass'n, 35 Wis.2d 605, 151 N.W.2d 730 (1967). In none of these cases has a court held that an irrevocable trust was created without a separate document explicitly creating a trust.
I note with interest that the majority cites Bogert, the leading authority on *623 trusts, for the proposition that a trust is irrevocable unless the settlor expressly reserves a power of revocation. The section cited, however, relates to revocation of trusts generally. The majority does not even refer to Bogert's long section directly on Totten trusts, which shows that the commonly accepted rule is that such deposits are generally held to create tentative trusts, revocable by the depositor:
"The form of the account, when coupled with evidence as to the status of the parties and their statements and as to the treatment of the account by the depositor, may lead to one of the following findings: (1) no trust was intended; (2) while a trust was intended it was invalid in whole or in part because it was `illusory'; (3) the attempted trust was void because it was testamentary in its nature and not created with the formalities required for wills; (4) that an immediate irrevocable trust of the account was intended; (5) an irrevocable trust was intended as to the balance of the account, after the exercise of a power in the depositor to withdraw income or principal at his pleasure during his life; and (6) a revocable trust of the balance in the account at the death of the depositor was intended.
"...
"Construction (4) above (namely, that of an irrevocable gift of the account to the beneficiary, both as to interest and the principal sum due) may be justified in rare cases, for example, where the depositor notifies the beneficiary of an intent to that effect, and either delivers the passbook and consequent control of the account to the beneficiary. Or the depositor, although retaining possession of the passbook, uses it for the sole benefit of the beneficiary by making withdrawals and paying them to or for the beneficiary.
"Construction (5) is common in the older cases. Here, expressly or by implication, the depositor provides that he is to have the power to withdraw interest or principal during his life to spend as he likes, but that the balance on hand at his death is to be payable to the beneficiary. In addition, the depositor has no power to revoke the trust during his life or by his will, either because he expressly or impliedly made the trust irrevocable or because the law provided that there should be no power of revocation in any trust unless the settlor expressly provided for it, and the depositor made no express statement as to revocation. The courts decree the execution of the trust as drawn, the beneficiary is entitled to the balance on hand at the death of the depositor, but has no rights with respect to the sums withdrawn by the depositor during his life.
"Since most recent cases imply a power of revocation in the depositor in all savings account trusts, where the existence of such a power is not negated by the depositor, construction (5) is not apt to be applied to many cases. Construction (6) is usually accepted."

G. Bogert, The Law of Trusts and Trustees, § 47, pp. 5-23 (2d ed. revised 1984) (citations omitted; emphasis added).
Several courts have addressed the question of whether a pledge of a Totten trust account as security for a loan constitutes a revocation of the trust and have held that it does, either completely or in proportion to the amount pledged. See cases collected in the annotation at 10 A.L.R. 4th 1229 (1981). In light of the majority decision it is not necessary to decide the further question, but I would hold that the pledge revokes the trust only proportionately.
The instant case is a perfect example of the reasons for treating a savings account trust as a revocable trust of the balance of the account at the depositor's death. All interest from the certificate of deposit was paid into Oscar F. Underwood's personal account. He used the CD as collateral for a number of loans without consulting his wife. His wife was allowed to testify without a Dead Man's Statute objection that "he told me that he had made it in my name," and that "he just said he gave me that $40,000 CD." Underwood's use of the money as he chose, and not to the benefit *624 of his wife, negates the possibility that his telling her about the CD would render a tentative trust irrevocable.
Code 1975, § 5-5A-40, would allow the bank to pay the proceeds of the CD to Mrs. Underwood, but it does not answer the question of whether the bank and the estate are entitled to treat the encumbrance of the funds as a withdrawal or a revocation of the tentative trust. See also § 5-16-47, applicable to savings and loan associations.
In rejecting the Totten trust the Court has indeed adopted a simple rule, but the danger lies in the simplicity. A slip of the pen or the checking of the wrong square on a form could divest the owner of his own funds without his having any intention to do so. I agree with the New York Court of Appeals and the courts of the other jurisdictions following Totten that to create an irrevocable trust there must be a more formal or explicit declaration. I would reverse the judgment below.
JONES, SHORES and ADAMS, JJ., concur.
NOTES
[1] The appellant contends that the trial court incorrectly relied on this testimony in its final judgment since, he says, its introduction was prohibited by the "Dead Man's Statute," Code 1975, § 12-21-163. The appellant contends that he seasonably interposed an objection to this testimony. However, the record reveals that Mrs. Underwood did testify to this information in one portion of her testimony without an objection being made by the appellant. Thus, the alleged error was waived when no objection was made. See, Smith v. Haynes, 364 So.2d 1168, 1170 (Ala.1978). See also, Akers v. Hamm, 446 So.2d 630, 631 (Ala.Civ.App.1984).
[2] This term is taken from Estes, In Search of a Less Tentative Totten, 5 Pepperdine L.Rev. 21, 22 (1977).