Rules of law should comport as much as possible with business customs and practices and with the intention of the parties. The majority's rejection of the Totten trust results in a blind rule that would give no weight to these considerations. *Page 622 
The Court of Appeals of New York resolved conflicting treatments of bank deposits in prior New York cases when it decided In re Totten, 179 N.Y. 112, 71 N.E. 748 (1904). It quoted extensively from the cases to explain the development of the rule that the creation of a bank account in the name of the depositor "as trustee for" (or, as here, "as custodian for") another does not automatically create an irrevocable trust. I reproduce portions of that opinion here to show the still-applicable reasons for the rule:
 "`[T]he character of such a transaction as creating a trust is not conclusively established by the mere fact of the deposit, so as to preclude evidence of contemporaneous facts and circumstances constituting res gestae, to show that the real motive of the depositor was not to create a trust, but to accomplish some independent and different purpose inconsistent with an intention to divest himself of the beneficial ownership of the fund.'
 ". . . `To constitute a trust, there must be an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created. . . . It may be justly said that a deposit in a savings bank by one person of his own money to the credit of another is consistent with an intention on the part of the depositor to give the money to the other. But it does not, we think, of itself, without more, authorize an affirmative finding that the deposit was made with that intent, when the deposit was to a new account, unaccompanied by any declaration of intention, and the depositor received at the time a passbook, the possession and presentation of which by the rules of the bank known to the depositor, is made the evidence of the right to draw the deposit. We cannot close our eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons, with no intention of divesting themselves of ownership. It is attributable to various reasons — reasons connected with taxation, rules of the banks limiting the amount which any one individual may keep on deposit, the desire to obtain high rates of interest where there is a discrimination based on the amount of deposits, and the desire on the part of many persons to veil or conceal from others knowledge of their pecuniary condition. In most cases where a deposit of this character is made as a gift there are contemporaneous facts or subsequent declarations by which the intention can be established independently of the form of the deposit. We are inclined to think that to infer a gift from the form of the deposit alone would, in a great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed, and defeat the real purpose of the depositor.'"
Id., 179 N.Y. at 121-23, 71 N.E.2d at 751 (citations omitted).
The source relied on in the law review article cited by the majority shows that at least 21 states and the District of Columbia have adopted the Totten trust. A. Scott, 1 The Law ofTrusts, § 58.3, n. 5 (3d ed. 1967 and supp. 1985). Cursory research has disclosed decisions from at least nine additional states accepting the principle that a bank account in this form creates either a Totten trust or no trust at all. Vaughn v.First Federal Savings Loan Ass'n, 85 Idaho 266, 378 P.2d 820
(1963); Succession of Shadrick, 129 So.2d 606 (La.App. 1961);McLain v. McLain, 108 Mich. App. 166, 310 N.W.2d 316 (1981);Concannon v. Winship, 94 Nev. 432, 581 P.2d 11 (1978); LocoCredit Union v. Reed, 85 N.M. 729, 516 P.2d 1112 (1973); Bakerv. Cox, 77 N.C. App. 445, 335 S.E.2d 71 (1985); Friedrich v.Bancohio National Bank, 14 Ohio App.3d 247, 470 N.E.2d 467
(1984); Gordon v. Portland Trust Bank, 201 Or. 648,271 P.2d 653 (1954); Rasmussen v. Oshkosh Savings Loan Ass'n,35 Wis.2d 605, 151 N.W.2d 730 (1967). In none of these cases has a court held that an irrevocable trust was created without a separate document explicitly creating a trust.
I note with interest that the majority cites Bogert, the leading authority on *Page 623 
trusts, for the proposition that a trust is irrevocable unless the settlor expressly reserves a power of revocation. The section cited, however, relates to revocation of trusts generally. The majority does not even refer to Bogert's long section directly on Totten trusts, which shows that the commonly accepted rule is that such deposits are generally held to create tentative trusts, revocable by the depositor:
 "The form of the account, when coupled with evidence as to the status of the parties and their statements and as to the treatment of the account by the depositor, may lead to one of the following findings: (1) no trust was intended; (2) while a trust was intended it was invalid in whole or in part because it was `illusory'; (3) the attempted trust was void because it was testamentary in its nature and not created with the formalities required for wills; (4) that an immediate irrevocable trust of the account was intended; (5) an irrevocable trust was intended as to the balance of the account, after the exercise of a power in the depositor to withdraw income or principal at his pleasure during his life; and (6) a revocable trust of the balance in the account at the death of the depositor was intended.
". . .
 "Construction (4) above (namely, that of an irrevocable gift of the account to the beneficiary, both as to interest and the principal sum due) may be justified in rare cases, for example, where the depositor notifies the beneficiary of an intent to that effect, and either delivers the passbook and consequent control of the account to the beneficiary. Or the depositor, although retaining possession of the passbook, uses it for the sole benefit of the beneficiary by making withdrawals and paying them to or for the beneficiary.
 "Construction (5) is common in the older cases. Here, expressly or by implication, the depositor provides that he is to have the power to withdraw interest or principal during his life to spend as he likes, but that the balance on hand at his death is to be payable to the beneficiary. In addition, the depositor has no power to revoke the trust during his life or by his will, either because he expressly or impliedly made the trust irrevocable or because the law provided that there should be no power of revocation in any trust unless the settlor expressly provided for it, and the depositor made no express statement as to revocation. The courts decree the execution of the trust as drawn, the beneficiary is entitled to the balance on hand at the death of the depositor, but has no rights with respect to the sums withdrawn by the depositor during his life.
 "Since most recent cases imply a power of revocation in the depositor in all savings account trusts, where the existence of such a power is not negated by the depositor, construction (5) is not apt to be applied to many cases. Construction (6) is usually accepted."
G. Bogert, The Law of Trusts and Trustees, § 47, pp. 5-23 (2d ed. revised 1984) (citations omitted; emphasis added).
Several courts have addressed the question of whether a pledge of a Totten trust account as security for a loan constitutes a revocation of the trust and have held that it does, either completely or in proportion to the amount pledged. See cases collected in the annotation at 10 A.L.R. 4th 1229 (1981). In light of the majority decision it is not necessary to decide the further question, but I would hold that the pledge revokes the trust only proportionately.
The instant case is a perfect example of the reasons for treating a savings account trust as a revocable trust of the balance of the account at the depositor's death. All interest from the certificate of deposit was paid into Oscar F. Underwood's personal account. He used the CD as collateral for a number of loans without consulting his wife. His wife was allowed to testify without a Dead Man's Statute objection that "he told me that he had made it in my name," and that "he just said he gave me that $40,000 CD." Underwood's use of the money as he chose, and not to the benefit *Page 624 
of his wife, negates the possibility that his telling her about the CD would render a tentative trust irrevocable.
Code 1975, § 5-5A-40, would allow the bank to pay the proceeds of the CD to Mrs. Underwood, but it does not answer the question of whether the bank and the estate are entitled to treat the encumbrance of the funds as a withdrawal or a revocation of the tentative trust. See also § 5-16-47, applicable to savings and loan associations.
In rejecting the Totten trust the Court has indeed adopted a simple rule, but the danger lies in the simplicity. A slip of the pen or the checking of the wrong square on a form could divest the owner of his own funds without his having any intention to do so. I agree with the New York Court of Appeals and the courts of the other jurisdictions following Totten that to create an irrevocable trust there must be a more formal or explicit declaration. I would reverse the judgment below.
JONES, SHORES and ADAMS, JJ., concur.