MANN, Judge
(dissenting).
I can well understand why the trial judge and my colleagues think this case is governed by Chase Federal Savings & Loan Assn. v. Sullivan,[1] but I think it contains two factual elements not there present which dictate a different and fairer result.
Robert Cleghorn and his niece, Anna Mae Morgan, went into the American National Bank and opened a savings account which the bank officer stated was supposed to be joint, with right of survivorship. Both of them signed the face of the signature card and neither was required by the officer who opened the account to sign the reverse, which contains the formal contract adequate to express completely the depositor’s intention. It was Cleghorn’s money, then on deposit in a northern bank, and Mrs. Morgan contributed nothing.
Cleghorn received notice of the opening of his account upon receipt of the fuhds transferred from the northern bank. This was addressed to him alone, and he went back to the bank to make sure that the account was made out as he instructed. The bank officer assured him that she listed his name alone on the signature card for indexing only, and added “Pay on death to Anna Mae Morgan” so that he would be siire that she’d have no trouble later on.
Neither withdrew anything from the account during Cleghorn’s lifetime, but the bank officer testified that the bank would have honored the signature of either, which the face of the card plainly contemplated. This is one distinction from Sullivan. The other is that Cleghorn immediately turned over the passbook to Mrs. Morgan. These elements suggest to me that there is at least sufficient factual variation from Sullivan to suggest the possibility of conflict certiorari on the theory of material factual departure from the basic principle laid down by the Supreme Court.[2]
Sullivan follows logically from the requirement that two witnesses must attest a *892 will and that a bank signature card purporting to create a joint account with right of survivorship will not do so in the absence of a present transfer of interest and right of control over the property. While this fits nicely the premises on which controls over testamentary disposition have been developed, the truth is that the folklore around the shuffleboard court is decidedly to the contrary. Everybody knows that you can put your money in an account from which you can withdraw what you need during your lifetime and rest assured that some designated beneficiary will have no trouble drawing out the balance after you’re gone. If you say the magic words “Robert Cleghorn in trust for Anna Mae Morgan” you have a Totten trust, which Florida recognizes[3] as indicating a clear intent on the depositor’s part to create a revocable inter vivos trust. Ask any elderly citizen what an inter vivos trust is or what the magic words are and he’d likely fail the test. But he knows perfectly well that it’s legal to do what he wants to do and that the people at the bank ought to know how to do it. They should.
Then, too, while considering trust theory, our Supreme Court has long ago decided that a trust may be created as to personal property and proved by parol evidence.[4]
The difficulty is that we are in one of those areas of the law in which common law courts have malfunctioned. The great glory of the common law has been its capacity for growth in the direction of obvious propriety. Instead of fitting the common transactions of our citizens into the clear needs of society in accordance with the clear expectations of the hapless depositors and their beneficiaries, we have accommodated the law to the pigeonholes of our minds, which seems a trifle too Procrustean for my taste. We speak of testamentary transactions, analyzing their requirements as if we were making scientific measurements. We look at the transaction to see if it might be a gift, and perhaps conclude regretfully that it can’t be, for want of delivery, or something. We think “trust”, rereading Totten,[5] and we don’t see the magic word on the signature card, and pass on.
Balderdash. The American National Bank received these funds in trust just as certainly as, in Bay Biscayne Co. v. Baile,[6] Mr. Baile was held to have been a trustee for Mrs. Carhart, the housekeeper whom Mr. Ogden, the settlor, wanted to benefit. The testimony of the bank’s officer is clear and undisputed. Cleghorn left the details to his banker.
The average citizen also knows perfectly well that you can say “Robert Cleghorn, payable on death to Anna Mae Morgan” and that she’ll get the money after he’s gone — if you buy government bonds. Millions of bonds have been so designated, pursuant to Treasury regulations.[7] And so much folklore passes for law in banks that bank officers think this is all right too, as was obvious in this case.
The Legislature follows the folklore. The result of Sullivan was overcome by legislation affecting savings and loan associations in 1969[8] and commercial banks in 1971,[9] too late to help in this case. Ironically, had Cleghorn gone to a savings and loan association instead of to a commercial bank, Fla.Stat. § 665.271 (1969), F.S.A., would have protected his beneficiary against the miscarriage of intention resulting here. Fla.Stat. § 659.291 (1971), F.S. *893 A. will protect the next beneficiary, but not Mrs. Morgan. These statutes indicate a clear legislative policy which recognizes the joint account with survivorship as a socially desirable form of property ownership, widely believed to be susceptible of informal creation, widely attempted by thousands of Floridians who trust their bankers, as they should.[10] Because of the legislative intervention we can hardly certify this case as one of great public interest, since it is now unlikely to arise again. But I would candidly hope that the Supreme Court would recognize that if, as the testimony shows without contradiction, Anna Mae Morgan held possession of this passbook during Cleghorn’s lifetime and could have withdrawn funds on her signature alone, the case is sufficiently distinguished from Sullivan although the bank officer did improperly fill out the signature card.[11]

. Fla.1960, 127 So.2d 112.

. Pinkerton-Hays Lumber Co. v. Pope, Fla.1961, 127 So.2d 441.

. Seymour v. Seymour, Fla.1956, 85 So.2d 726.

. Bay Biscayne Co. v. Baile, 1917, 73 Fla.1120, 75 So. 860.

. In re Totten, N.Y.1904, 179 N.Y. 112, 71 N.E. 748.

. N. 4 supra.

. 31 C.F.R. § 315.7.

. Fla.Stat. § 665.271 (1969), F.S.A.

. Fla.Stat. § 659.291 (1971), F.S.A.

. Note, Disposition of Bank Accounts: The Poor Man’s Will, 53 Col.L.Rev. 103 (1953).

. See, generally, Kemper, The Joint Survivorship Bank Account—A Concept Without a Name, 41 Calif.L.Rev. 596 (1953); Kemper, Five More Years of the Joint Bank Account Muddle, 26 Chi.L. Rev. 376 (1959).