JAMES M. CAHILL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cahill v. Commissioner
Docket No. 9112-80.
United States Tax Court
T.C. Memo 1982-233; 1982 Tax Ct. Memo LEXIS 516; 43 T.C.M. (CCH) 1250; T.C.M. (RIA) 82233; April 29, 1982. James M. Cahill, pro se. Victoria Wilson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1976 in the amount of $ 162. The only issue *517 for decision is whether petitioner understated interest income on his return in the amount of $ 606. FINDING OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, whose legal residence at the time of the filing of his petition in this case was Manorville, New York, filed a joint Federal income tax return with his then wife, Gloria G. Cahill, for the calendar year 1976. Petitioner and Gloria G. Cahill (Gloria George Cahill) were married in 1971. At the time of their marriage, petitioner had no knowledge of any property or of any cash or bank accounts that either he or Gloria owned. Gloria was born on March 24, 1948, and was therefore 23 years old when she and petitioner were married. During their entire marriage, the only checking account which they maintained was maintained in petitioner's name. All of the salary checks of both petitioner and his wife were deposited in this account. Their bills were paid from this account and from time to time moneys were withdrawn from this account and deposited in savings accounts in their joint names. During the year 1976, petitioner and his wife maintained a joint savings account at the Long Island *518 Trust Company from which they received interest of $ 288. They also maintained a joint savings account at Suffolk County Federal from which they received interest of $ 63. The addresses shown on these accounts were addresses in Patchogue, New York, where petitioner and his wife resided. So far as petitioner knew, all moneys received by either petitioner or his wife during their entire married life were deposited in his checking account or one of these two savings accounts in their joint names. In January 1977 petitioner and his wife were divorced. At the time of the trial and for some time prior thereto, petitioner has not known the address of his former wife, Gloria George Cahill, and although he has attempted to obtain that address, including requesting representatives of respondent to give him the address, he has been unable to obtain any address for his former wife and unable after reasonable efforts to locate her. Petitioner also does not know the address of Gloria George Cahill's father and has been unable to obtain his address. The joint Federal income tax return filed by petitioner and Gloria George Cahill for the year 1976 was prepared by a return preparer. On *519 this return they reported income from wages or salaries of $ 23,636, composed of $ 9,000.36 received by Gloria George Cahill from Dayton T. Brown, Inc., and $ 14,635.41 received by petitioner from the State of New York. The only other income they reported was $ 390 of interest income. On their return they itemized their deductions and included in their itemized deductions was interest paid of $ 3,000, which consisted of $ 30 of interest on a school loan, $ 400 of interest on bank cards, $ 69 of interest to a clothing store, $ 1,801 of mortgage interest, and $ 700 of interest on a bank loan for the purchase of a car. On October 7, 1968, an account was opened in the name of Gloria G. George in trust for Joseph O. George at the County Federal Savings and Loan Association, Rockville Centre, New York. The account number was 110636. On April 11, 1975, this account was closed and account number C1-22261 in the name of Gloria G. George in trust for Joseph D. George was opened by a transfer of $ 5,000 from account number 110636. Also on April 11, 1975, account number 153467 was opened in the name of Gloria G. George in trust for Joseph D. George with a transfer of funds from account *520 number 110636. Account number 153467 was closed on August 14, 1975, by the transfer of the $ 5,000 balance in the account to account number 12-7-1034 in the name of Gloria G. George in trust for D. Joseph George. On November 5, 1976, account number C1-22261 and account number 153467 were both closed and the funds in these accounts, each in the amount of $ 5,032.38, were transferred to account number 12-7-1633 in the name of Dimitri J. George in trust for Gloria G. George. The address shown for Gloria G. (Miss) George, trustee for D. Joseph George, on account number C-12-1034 was 62-49 83rd Street, Rego Park, New York. On the top of the individual trust account card at the bank was printed "Special Handling," and the relationship of the named beneficiary to the trustee was shown to be "father." At the time this account was closed on November 5, 1976, the residence of Gloria G. George was shown as P.O. Box 631, Margaretville, New York. Gloria George Cahill did not live in either Rego Park, New York, or Margaretville, New York, at any time during the years 1971 through 1976. Her father at one time lived in Rego Park, New York, and for a part of certain years lived in Margaretville, *521 New York. From the time of the opening of accounts numbered C1-22261 and 153467, all interest on these accounts was paid to D. Joseph George. Likewise, all interest on acount number 12-7-1034 was paid in quarterly payments to D. Joseph George. The County Federal Savings and Loan Association had on file an undated document attached to the signature card of account number 153467 which stated as follows: I hereby authorize County Federal Savings and Loan Association to draw a Quarterly interest check to the order of D. Joseph George from the above account and mail it to him at the following address: 62-49 83rd St., Rego Park, New York 11374 The above statement was typed and underneath was typed a line under which was typed "Gloria G. George." Next to the line was a check mark and next to the check mark appeared in handwriting "Gloria G. George." To the left-hand side of the line on which the name "Gloria G. George" appeared in handwriting was "SPECIAL HANDLING." Petitioner was of the opinion that his former wife's father had used the names of Joseph George, Brent George, D. Joseph George, Dimitri Joseph George, and Dimitri J. George. Petitioner had no knowledge of nor *522 did he receive any benefit from any of the bank accounts at County Federal Savings and Loan Association maintained in the name of Gloria G. George. The interest paid out by quarterly checks to D. Joseph George from accounts numbered C1-22261 and 12-7-1034 during the year 1976 totaled $ 645.06. Pursuant to its custom where an account was held in the name of a trustee in trust for another individual, the County Federal Savings and Loan Association reported to the Internal Revenue Service the interest on accounts numbered C1-22261 and 12-7-1034 in the name of Gloria G. George, P.O. Box 631, Margaretville, New York, under the name and social security number of Gloria G. George. The social security number was that of Gloria George Cahill. Respondent mailed a joint notice of deficiency to James and Gloria Cahill, 34 9 Winding Path, Manorville, New York, for the year 1976. In this notice the income as reported by petitioner and his wife was increased by the amount of $ 609 with the following explanation: ALL INTEREST INCOME IS INCLUDIBLE IN INCOME
SHOWN ON RETURN OR AS PREV. ADJUSTED $ 390.00
CORRECTED AMOUNT
[1] $ 999.00
*523 OPINION Respondent takes the position that the mere fact that the two accounts at the County Federal Savings and Loan Association were carried in the name of Gloria G. George is conclusive proof that the money in these accounts belonged to her and the interest income paid on these accounts was her income. Respondent contends no evidence that might be offered could rebut this presumed fact. In support of his contention, respondent relies on a misstatement of the holding in the case of In re Totten,179 N.Y. 112, 71 N.E. 748 (1904), and in the many cases following that case as well as a misinterpretation of N.Y. Est. Powers & Trusts Law sec. 7-5.1 through 7-5.7 (McKinney 1967), which became effective the beginning of September 1975. Respondent states in citing the Totten case and a number of cases which have relied on and followed that case as follows: When a trust account is opened, a revocable trust is created, and the trustee is considered to be the owner of the account. The beneficiary has no legal interest in the funds whatsoever. * * * Respondent further states: Similarly under the statute, the only method by which a *524 gift can be made of funds on deposit in a "Totten trust" during the depositor's lifetime is for the depositor to withdraw the funds and give them to the beneficiary. * * * Respondent's misrepresentation or misunderstanding of the law is clearly apparent from the following often quoted part of the Totten case: After much reflection upon the subject, guided by the principles established by our former decisions, we announce the following as our conclusion: A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor. * * * [Emphasis supplied; 71 N.E. at 752.] In the many cases that have been decided *525 since 1904 involving "Totten trusts," the Courts have made it unequivocally clear that a "Totten trust" or revocable trust is presumed to arise only where the deposit by the depositor is of his own funds. Several cases following the Totten case have dealt with a situation where the money deposited has not been that of the trustee but in fact has been the funds of the beneficiary. The Court in In re Miller's Estate,109 N.Y.S.2d 516 (Surr. Ct. Monroe County 1951), held that money placed by a decedent in an account in his sister-in-law's name as trustee for him did not create a "Totten trust" and that the funds in the account belonged to the decedent and not to the sister-in-law. In so holding, the Court discussed the Totten case and cases following the Totten case which dealt with whether the trustee had taken action which caused an irreovocable trust to be created during his lifetime and then stated (at 518): But it is doubtful that the above situations have any direct bearing on the case at bar, for in those cases admittedly a Totten trust had been created, and the rules of law with respect thereto were applied. Here there is no proof that *526 a true Totten trust was created. The money belonged to the beneficiary, as was the case in Matter of McLaughlin's Estate, 148 Misc. 113, 265 N.Y.S. 332; Matter of Milton's Estate, 148 Misc. 315, 265 N.Y.S. 735; Matter of Farrell's Estate, 177 Misc. 389, 30 N.Y.S.2d 742, wherein it was held that upon the death of the respective beneficiaries before the trustees, the legal representatives of the beneficiaries were entitled to the funds. * * * In the case of Application of Wheeler,72 N.Y.S.2d 115 (Surr. Ct. Otsego County 1947), the issue was whether upon the death of the named beneficiary of a savings account the named trustee had a right to the funds. The administratrix of the decedent's estate claimed that the funds were property of the decedent. The facts were that a Mrs. Genevieve Merrill had deposited her own funds in an account in the name of "Mrs. Mabel Simmons, Trustee for Mrs. Genevieve Merrill." Mrs. Simmons was Mrs. Merrill's daughter. The record showed that during Mrs. Merrill's lifetime, Mrs. Simmons acted as trustee of the account and there is no showing as to who had control of the passbook during this period. *527 The Court concluded that the funds in the account belonged to Mrs. Merrill at the time of her death. After noting that, counsel for Mrs. Simmons urged that the trust was a so-called "Totten trust," the Court stated that a "Totten trust" is one created by the deposit of one's own money in one's own name as the trustee for another and that such a trust has been held to be revocable during the lifetime of the depositor but irrevocable upon the death of the depositor prior to the death of the beneficiary. The Court, however, pointed out that in the case that was being considered, the funds deposited were not those of the trustee but of the person designated as the beneficiary and that there was a total absence of evidence of a gift by Mrs. Merrill of the funds during her lifetime. The Court stated: On the contrary it appears that the decedent was infirm and unable to write. It also appears that she was living in another city from that in which the funds were on deposit with petitioner and that she had ceased to live with petitioner. It is impossible to make any positive finding as to the reason for the creation of the account in question in the Schenectady Savings Bank in the form *528 in which it existed at the time of decedent's death. However, the probability that the funds of this elderly woman, unable to write, were deposited in her daughter's name as Trustee for convenience is stronger than the probability that it was so deposited with the idea of divesting decedent of her title thereto either during her lifetime or upon her death. * * * [Application of Wheeler,72 N.Y.S.2d at 117.] It is clear from the New York law that only where a person deposits his own funds as trustee for another is a "Totten trust" created. As respondent points out in his brief, N.Y. Est. Powers & Trusts Law (McKinney 1967), was amended effective September 1, 1975, to codify the law as it had developed with respect to "Totten trusts" with certain changes. N.Y. Est. Powers & Trusts Law sec. 7-5.1(b) (McKinney 1967), as amended effective September 1, 1975, states that "A 'depositor' is a person in whose name a trust account subject to this part is established or maintained," and section 7-5.1(d) provides as follows: (d) A "trust account" includes a savings, share, certificate or deposit account in a financial institution established *529 by a depositor describing himself as trustee for another, other than a depositor describing himself as acting under a will, trust instrument or other instrument, court order or decree. Section 7-5.2 provides in part as follows: The funds in a trust account, which shall include any dividends or interest thereon, shall be trust funds subject to the following terms: (1) The trust can be revoked, terminated or modified by the depositor during his lifetime only by means of, and to the extent of, withdrawals from or charges against the trust account made or authorized by the depositor. Further provisions of the statute concern termination or modification of the trust by will, termination of the trust upon the death of the beneficiary with title to the funds then being in the depositor clear of the trust, and termination of the trust upon the death of the depositor with title to the funds vesting in the beneficiary clear of the trust. The statute further provides for protection of a financial institution where payment of the funds is made in accordance with the stated rights of the depositor and beneficiary absent the serving upon it of some form of restraining order or other process *530 prior to the funds being paid to the beneficiary upon the death of the depositor. In the Practice Commentary explaining N.Y. Est. Powers & Trusts Law secs. 7-5.1 through 7-5.7 (McKinney Suppl. 1981-1982), the following statement appears: It would also appear that, as an unstated premise, the depositor would have to be depositing his own funds in such a trust account. Where, for example, an attorney, fiduciary or agent deposited funds of a third party in such an account, this section would not govern, even if the attorney, fiduciary or agent neglected to state the true nature of the transaction on the bank account cards. * * * However, in this case we need not decide whether this commentary correctly expresses the application of the statute since section 7-5.7 entitled "Application" states as follows: This part shall apply to all funds in trust accounts, as defined in paragraph (d) of section 7-5.1, which are in existence on its effective date, except that its provisions shall not impair or defeat any rights which have accrued prior to such date. Since all of the deposits involved in the instant case, except the transfer of the funds from accounts in *531 the name of Gloria G. George in trust for Joseph D. George to an account entitled "Dimitri J. George as trustee for Gloria G. George" on November 5, 1976, were made prior to September 1, 1975, the rights that existed in those accounts as of September 1, 1975, were preserved by the provisions of N.Y. Est. Powers & Trusts Law sec. 7-5.7 (McKinney 1967). Therefore, applying the New York law in this case, it is necessary for us to determine the true owner of the funds in the accounts in the name of Gloria G. George in order to determine to whom the interest on those accounts is taxable. If the funds deposited in the accounts were funds of Gloria G. George, then under New York law a revocable trust was created. Section 676(a) [2] provides that the grantor shall be treated s the owner of any portion of a trust where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a nonadverse party or both. While cases involving the application of section 676 have dealt with factual situations more complicated than those involved in "Totten trust," these cases have consistently held that where a grantor creates a trust with *532 his own funds, the income from that trust is taxable to the grantor if the trust is revocable within a period of 10 years from the date it was created. See Garland v. Commissioner,42 B.T.A. 324, 328 (1940); section 676(b). It is also settled that the determination of whether a trust is revocable depends on the law of the state in which it was created. See Blair v. Commissioner,300 U.S. 5 (1937). It would therefore follow that a "Totten trust,"being a revocable trust under New York law, the income from such a trust would be taxable to the grantortrustee regardless of who actually received the income. [3]
*533 Since respondent has determined in this case that the income from the two accounts created in the name of Gloria G. George in trust for Joseph D. George is includable in the income of petitioner's former wife, the burden of proof is on petitioner to establish that Gloria G. George was not in fact the owner of the funds in th two accounts. Clearly, if the two accounts were opened by Gloria G. George with her own funds, the interest received on those accounts is taxable to her even though the amounts were actually paid to her father. [4] Section 676(a). It is incumbent upon petitioner to establish that the funds with which the two accounts were established were not the property of Gloria G. George. We will therefore review the evidence presented to us to determine whether it is sufficient to establish that the funds in the two accounts were not the property of Gloria G. George. If we so conclude, then petitioner has sustained his burden so that it is incumbent on respondent to go forward with rebuttal evidence. *534 It is respondent's position that the evidence produced in this record is insufficient to carry petitioner's burden and that even though the address of Gloria G. George and her father are within respondent's knowledge but not within petitioner's knowledge, it is not incumbent on respondent to either furnish these addresses to petitioner or to produce either petitioner's former wife or her father as a witness. With respect to the failure to supply petitioner with the addresses when he requested such information, respondent relies on the Privacy Act. In explanation of why he did not call either petitioner's former wife or her father as a witness, respondent's counsel stated that the expense involved was too great as compared to the amount of the deficiency involved in this case. This record shows that the funds in the two accounts here involved came from funds originally deposited in the name of Gloria G. George in trust for Joseph O. George in 1968 when petitioner's former wife was only 20 years old. The record further shows that all interest on these accounts had for some time prior to the year here involved been paid to D. Joseph George and the inference from the record is *535 that all interest was paid to D. Joseph George from the date of creation of the original account in 1968. The evidence further shows that during the five years of their married life, petitioner and his former wife were of modest means, living on relatively small salaries with no property other than property they were able to acquire with their relatively small income. The evidence also shows that during the year here in issue, petitioner and his former wife paid interest not only on their home mortgage but also on a car loan, on credit card accounts, on a school loan, and to a clothing store. The record further shows that on November 5, 1976, the funds in the two accounts were transferred to a fund in the name of Dimitri J. George in trust for Gloria G. George. It also shows that the addresses given for all of the accounts here involved were addresses of Gloria G. George's father and not addresses of Gloria G. George. To accept respondent's position in this case, we would have to conclude that a 20-year-old woman in some way obtained $ 10,000 in her own right which of her own free will she deposited in an account in trust for her father with the interest payable to her father *536 and, through a period of eight years when she was in modest financial circumstances, continued making gifts to her father of the interest on her own funds by having the interest paid to her father. We would further have to conclude that after this period of over eight years, she voluntarily transferred her own funds to an account in her father's name in trust for her. The evidence petitioner produced is not conclusive proof that this scenario did not occur. However, in our view, the evidence here as in the case of Application of Wheeler,supra, creates a much higher probability that the funds deposited in the accounts here involved were those of petitioner's former wife's father than that they were funds owned by petitioner's former wife. In many instances it is necessary to reach a conclusion in a factual case on the basis of evidence which is not totally conclusive, particularly where, as here, the ability to produce the testimony of the only two people who knew the facts was under respondent's control and respondent chose not to produce either witness. In fact, the indication from the record is that petitioner on numerous occasions had attempted to have *537 employees of the Internal Revenue Service, including respondent's counsel in this case, contact his former wife or his former wife's father and inquire as to the source of the funds which were deposited in the two accounts here involved. The result of these efforts was that none of the employees of respondent, or respondent's counsel in this case, were willing to or had agreed to comply with his request. Petitioner also requested employees of respondent to check the income tax return of Joseph D. George to see if he had reported the income on the accounts here involved and this request was not granted. Respondent cites In re Cohen's Will,90 N.Y.S.2d 776, 779 (Surr.Ct. Weschester County, 1949), as holding that where there is no evidence of the parties' intent other than the form of the deposit, the Courts infer that the depositor intended to create a revocable trust of the deposit. Respondent, however, ignores the fact that in In re Cohen's Will,supra, the Court concluded that the funds there in issue were the funds of the beneficiary and stated (at 779): The sole evidence as to the aim of the deposit, however, is not here the form of the *538 account. A brother of decedent testified to statements made by decedent three or four years before the hearing herein to he effect that "every nickel Hymie gave her she saved for him", and in referring to a bank account: "What I got here belongs to Hymie" and that "He is working for the money and that money belongs to him".These statements were designed to establish that the decedent regarded the proceeds of the account as monies being held by her for her son, the respondent herein. Similarly, in the instant case, petitioner in effect testified that during their married life he and his former wife had an understanding that each was contributing to their joint support and their joint savings accodunts, all the income he or she received and he had no reason to doubt that all income of his former wife was so used. In our view, petitioner has shown by a preponderance of the evidence that the funds in the two accounts at the County Federal Savings and Loan Association in the name of Gloria G. George in trust for Joseph D. George were not in fact owned by his former wife but were the property of her father, Joseph D. George, the person to whom the interest was paid. [5] Under the *539 circumstances, we conclude that the interest was not the income of Gloria G. George.
*540 Decision will be entered for the petitioner.
Footnotes
1. Although in the notice of deficiency petitioner's interest income was increased by $ 609, on brief respondent conceded that the proper amount of the increase should have been $ 606.↩
2. Unless othewise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. ↩
3. In Rev. Rul. 62-148, 1962-2 C.B. 153, respondent held that a taxpayer who deposits his own funds in a New York savings bank in trust for his minor son is taxable under sec. 676(a) on the interest on the account absent any evidence to show his intention in making the deposit. This ruling relies on In re Totten,179 N.Y. 112, 71 N.E. 748↩ (1904), for its conclusion that the taxpayer has created a revocable trust.
4. Petitioner makes no claim that he is an innocent spouse within the meaning of section 6013(e) of the Internal Revenue Code of 1954↩ and clearly he would not be since there has been no omission from gross income of 25 percent of the reported income. Petitioner did attempt to make some issue of the fact that the notice of deficiency which was mailed to him and his former wife on March 26, 1980, was not mailed to his former wife's last known address and that, insofar as he knew, she never received a copy of the notice since he has not known her address or where to get in touch with her for a period well before the date of the issuance of the notice. Petitioner raised no issue in this regard in the case and, since he timely received the notice, it is clear that no issue in this respect exists in this case.
5. Although the fact is not entirely clear from the record, we infer that neither petitioner nor employees of respondent nor counsel for respondent in this case were fully aware of the entire history of the accounts in the name of Gloria G. George at the County Federal Savings and Loan Association until shortly before the trial of this case and possibly only when the representative of the savings and loan association, who had been subpoenaed by both petitioner and respondent, testified and produced the documents. As set forth in our findings of fact, the report of the interest payments by the savings and loan association to the Internal Revenue Service gave no indication that the account in the name of Gloria G. George was set up as a trust account. The record shows that petitioner had made numerous efforts to obtain complete information on the accounts from the savings and loan association to no avail until a witness appeared at the trial in response to the subpoenas and produced all the documents which the employees under his supervision had been able to find. Some of the documents with respect to the accounts had not been located. However, the information was much more complete than the very sketchy information previously furnished to petitioner. The record also shows that petitioner had attempted unsuccessfully prior to the trial to obtain assistance from employees of the Internal Revenue Service in obtaining complete records of the savings and loan association of accounts showing the name of Gloria G. George. Furthermore, we have not overlooked the fact that petitioner was far from consistent in the various positions he took. It is clear that he was of the opinion that the accounts here involved had actually been opened by his former wife's father without her knowledge and that his former wife, if contacted, would have no knowledge of these accounts. There is some indication in the record, from a comparison of signatures of Gloria G. George on the bank signature cards with the signature of petitioner's former wife on the tax return filed by petitioner and his former wife for the year 1976, that this in fact might be the case. Notably, the G's in the signature on the tax return are totally different from the G's on the signature cards. There are other letters which are differently formed. Petitioner testified that he knew that the signature on the tax return was that of his former wife. However, no testimony of a handwriting expert was produced and without such testimony the Court is unable to conclude that the signatures on the various signature cards were not the signatures of Gloria G. George although the dissimilarity of the writing does arouse suspicion.↩